UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6023 CIV HURLEY

R/S ASSOCIATES, a Florida
Limited Partnership and
DAN SHOOSTER

        Plaintiff

vs.

ROBERT YARI and FORUM
ARLINGTON PROPERTIES, LTD. AND
ALLIANCE COMMERCIAL MANAGEMENT,

        Defendants

_____/

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED COMPLAINT
FOR LACK OF PERSONAL JURISDICTION

COME NOW the Plaintiffs, R/S Associates, a Florida limited partnership and Dan Shooster (hereinafter jointly referred to as "Plaintiffs), by and through their undersigned counsel and for their Response to Defendants', Bob Yari, Forum Arlington Properties, Ltd. and Alliance Management Co., LLC's (sometimes jointly referred to as "Defendants") Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction would state as follows:

    1.   On or about February 1, 2000, Plaintiffs filed their First Amended Complaint, a copy of which is attached hereto as Exhibit "A".

    2.   On or about February 17, 2000, Defendants filed their Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and Memorandum of Law, a copy of which is attached

hereto as Exhibit "B".

3.    Defendants' Motion to Dismiss essentially states that Defendants did not have the prerequisite minimum contacts with the State of Florida and therefore, there is no personal jurisdiction over the Defendants pursuant to Federal Rules of Civil Procedure 12(b)(6).  Same is factually and legally unsupported.

4.    Attached hereto as Exhibit "C" is an Affidavit of Dan Shooster specifically setting forth  the fact that Bob Yari acting individually  and  as  an  agent  for  Defendants  Forum  Arlington Properties, Ltd. and Alliance Management Co., LLC and agents of these  three  (3)  Defendants  visited  Pompano  Beach,  Florida  on several occasions for the specific purpose of doing business with the Plaintiffs which business dealings are the subject matter of the aforedescribed Exhibit "A" First Amended Complaint.

WHEREFORE, Plaintiffs pray that Defendants' Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction be denied.

<u>**MEMORANDUM OF LAW IN SUPPORT
OF PLAINTIFFS' RESPONSE TO
DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT FOR
LACK OF PERSONAL JURISDICTION**</u>

5.    Defendants    contend    this    Court    should    not    exert jurisdiction  over  the  Defendants  due  to  a  purported  lack  of sufficient presence or minimum contacts with the state of Florida.

6.    This contention is without merit.

A.    <u>**Personal Jurisdiction -- Non-Residents**</u>

In a diversity action, exercise of personal jurisdiction over

51Shooster\Response.MD2\2-25-2000\kag5ds

2

a non-resident defendant must comply with the forum state's long-arm statute, as well as the Constitutional requirements of due process under the Fourteenth Amendment.  Doe v. National Medical Services, 974 F.2d 143 (10th Cir. 1992).

Modern cases recognize a non-resident's "minimum contacts" with the forum state as a basis for local jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); Shaffer v. Heitner, 443 U.S. 186, 97 S. Ct. 2569 (1977).

Application of the "minimum contacts" test is not a mechanical exercise.  Rather, personal jurisdiction depends on the facts of each case... the test being whether, under those facts, the forum state has sufficient relationship with the defendant and the litigation to make it reasonable (fair play) to require him or her to defend the action in a federal court located in that state.  The purpose of the minimum contacts requirement is to (1) protect the defendant against the burdens of litigating at a distant or inconvenience forum, and (2) to ensure that states do not reach out beyond the limits of their sovereignty imposed by their status in a federal system.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564 (1980). Ordinarily, each defendant's "contacts" with the forum state must be assessed individually. Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984).

Several cases more recently decided by the Supreme Court indicate that the court may now require a "realistic nexus" between a forum and a non-resident defendant. See Shaffer v. Heitner,

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

<u>supra</u>; <u>Kulko v. California Superior Court</u>, 436 U.S. 84, 98 S. Ct. 1690 (1978); <u>World-Wide Volkswagen Corp. v. Woodson, supra</u>; <u>Rush v. Savchuk</u>, 444 U.S. 320, 100 S.Ct. 571 (1980).

In <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 105 S.Ct. 2174 (1985), the plaintiff, a Florida resident, entered into a franchise with the defendant, which provided that the contract was to be interpreted under the laws of Florida.  The defendant never entered Florida and attempted to avoid jurisdiction based on a lack of minimum contacts.  The Supreme Court held that once a defendant avails himself or herself of the privilege of conducting business in a forum, jurisdiction cannot be avoided merely because the defendant <u>did not enter the forum state</u>; and, upon a showing by the plaintiff of a prima facie case of <u>minimum contacts</u>, the burden shifts to the defendant to show that the assertion of jurisdiction would be unreasonable.

Moreover, if the non-resident <u>committed the liability-producing act</u> while <u>physically present in the forum state, this is almost always held a sufficient "contact" to support personal jurisdiction in lawsuits arising from those acts</u>.  <u>Lundgren v. Sup. Ct.</u>, 111 Cal.App.3d 477, 484, 168 Cal. Rptr. 717, 720 (1980).

In the present case, it is clear by the declaration of Dan Shooster that Defendants conducted an aggressive, continuous and systematic relationship with Plaintiffs in Florida.  Personal trips were made by Yari as well as other representatives of Yari's to the Festival Flea Market Mall Florida facility specifically in connection with the development of the Festival Flea Market Mall

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

project. All agreements were presented in Florida. All research and development were done here. Numerous telephone calls took place between Defendants and Plaintiffs. Additionally, it was while Yari was in Florida that he illegally misappropriated the intellectual property rights of Plaintiffs, which in itself constitutes actionable conduct committed by Defendant while physically present within the

forum state of Florida.

As a result, Plaintiffs respectfully contend that they have established a prima facie case of <u>minimum contacts</u> between Defendants and this Florida forum, which is sufficient to vest jurisdiction of this action with this Court.

**B.   <u>General Versus Limited Jurisdiction</u>**

In <u>Helicopteros Nacionales de Columbia v. Hall</u>, 466 U.S. 408, 104 S.Ct. 1868 (1984), the court adopted two types of jurisdiction over a non-resident:  general and specific jurisdiction.  The extent to which a court can exercise personal jurisdiction (absent the traditional bases of consent, domicile, or physical presence), depends on the nature and quality of defendants' "contacts" with the forum state.

If a defendant is domiciled in the forum state, or its activities there are <u>"substantial, continuous and systematic"</u>, a federal court can, if permitted by the state's "long-arm" statute, exercise jurisdiction as to any cause of action -- even if unrelated to defendant's activities within the state. <u>Perkins v. Benquet Consolidated Mining Co.</u>, 342 U.S. 437, 445, 72 S.Ct. 413,

418 (1952).

In the present case, Plaintiffs respectfully submit that the systematic and continuous activities and conduct by Defendants in conjunction with its business relationship with Plaintiffs in the forum state of Florida, as more particularly outlined and described in Plaintiffs' supporting declaration hereto, constitutes a sufficient basis as a matter of law, for the court to find that general personal jurisdiction exists.

**B-1  <u>Limited Specific Jurisdiction</u>**

Even if the court is disinclined to find general jurisdiction, <u>specific jurisdiction</u> may be asserted by this court if the Defendants have purposefully directed their activities toward this forum state, and if the lawsuit is based on the injuries that arose out of, or related to, the Defendants' conduct within this forum state of Florida. See <u>Burger King</u>, <u>supra</u>; <u>Helicopteros Nacionales de Columbia</u>, <u>supra</u>.

The courts have defined the test for <u>specific jurisdiction</u> in <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377 (9th Cir. 1990), as follows: (1) the defendant must have done some act by which the defendant purposely avails himself or herself of the privilege of conducting activities in the forum, thereby invoking the benefit and protection of its laws; (2) the claim must arise out of the defendant's forum -- related activities; and (3) the exercise of jurisdiction must be reasonable.  In <u>Ballard v. Savage</u>, 65 F.3d 1495 (9th Cir. 1995), the court reaffirmed its position in <u>Shute</u>, applying the "but for" test.

The "purposeful availment" requirement is satisfied where the (forum-related) contacts proximately result from actions by the defendant itself that create a substantial connection with the forum state. Further, contracting parties who "reach out beyond one state to create <u>continuing relationships and obligations with citizens of another state</u>" may be found to have "purposefully availed" themselves of benefits and protections under the other state's law. <u>Burger King</u>, <u>supra</u>, 471 U.S. at 474; 105 S.Ct. 2174, 2183.

Provided a "substantial connection" with the forum is created, even a <u>single act</u> may support limited personal jurisdiction over a non-resident. <u>McGee v. International Life Ins. Co.</u>, 355 U.S. 220, 78 S.Ct. 199 (1957).

With respect to the purposeful availment requirement, Plaintiffs respectfully contend that Defendants "purposefully availed themselves" to Florida's jurisdiction by virtue of their ongoing continuous business relationship with Plaintiffs in connection with the development of the Festival Flea Market Mall product, which facts are more particularly outlined in Plaintiffs' supporting declaration.

Regarding the second requirement for limited specific jurisdiction that the claim must arise out of defendant's forum-related activities, many courts have followed a "but for" test in determining whether the claim "arises out of" the non-resident's forum-related activities, i.e., if plaintiff would not have suffered loss "but for" defendant's activities, this element is

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

satisfied.    See <u>Ballard v. Savage</u>, <u>supra</u>; <u>Prejean v. Sonatrach, Inc.</u>, 652 F.2d 1260, 1270, fn. 21 (5th Cir. 1981).    Other courts require only that the cause of action of whatever type, have a "substantial connection" with the defendant and state activities. <u>Third Nat'l Bank in Nashville v. WEDGE Group, Inc.</u>, 882 F.2d 1087, 1091 (6th Cir. 1989).

In the present case, under any of these tests, it is clear that the allegations contained in Plaintiffs' First Amended Complaint specifically relate to the conduct of Defendants and their forum-related activities related to Plaintiffs and the Festival Flea Market Mall product.

With respect to the "reasonableness" criteria, it must appear that the exercise of jurisdiction by local courts in the particular case would "comport with fair play and substantial justice." <u>Burger King</u>, <u>supra</u>, 471 U.S. at 477-478, 105 S.Ct. at 2184-2185.

It should be noted that Defendants' inconvenience alone is not sufficient.    The mere fact that local litigation is inconvenient (or some other forum more convenient) is not enough.    Litigation locally must be so gravely difficult that it puts the Defendants to a severe disadvantage in comparison to his or her opponent. Requiring the non-resident to defend locally <u>is not constitutionally unreasonable</u> "in this era of fax machines and discount air travel." <u>Sher v. Johnson</u>, 911 F.2d 1357, 1365 (9th Cir. 1990).

The burden is on the non-resident to prove that the forum's exercise of jurisdiction would not comport with "fair play and

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

substantial justice." <u>Amoco Egypt Oil Co. v. Elonis Navigation Co.</u>, 1 F.3d 848, 851 (9th Cir. 1993).

More importantly, if a non-resident has <u>deliberately engaged in significant activities within the forum state</u> "it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." <u>Burger King</u>, <u>supra</u>, 471 U.S. at 477, 105 S.Ct. at 2184.

Again, Plaintiffs respectfully contend, based upon the particular facts and circumstances in this case, and particularly those facts as set forth in Plaintiffs' supporting declaration, that a reasonable basis exists for this court to assert jurisdiction, whether general or specific, in this case.

WHEREFORE, Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster pray this Honorable Court deny Defendants' Motion to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction and/or provide such other or further relief as this Honorable Court deems just and proper.

Respectfully submitted,

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Road #801
Boca Raton, Florida 33486
Tel: (561) 395-5511
Fax: (561) 368-9274

by: _____
KEITH A. GOLDBAUM, ESQUIRE
FBN 0475637

Date: _2/23/00_____

9

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

I HEREBY CERTIFY a copy of the foregoing has been forwarded to Elaine Johnson James, Esquire, 1645 Palm Beach Lakes Boulevard, Suite 1200, West Palm Beach, Fl 33401 this _2∅_ day of ___FEB___, 2000.

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Road #801
Boca Raton, Florida 33486
Tel: (561) 395-5511
Fax: (561) 368-9274

by: _____
KEITH A. GOLDBAUM, ESQUIRE
FBN 0475637

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6023 CIV HURLEY

R/S ASSOCIATES, a Florida
Limited Partnership and
DAN SHOOSTER

      Plaintiff

vs.

ROBERT YARI and FORUM
ARLINGTON PROPERTIES, LTD. AND
ALLIANCE COMMERCIAL MANAGEMENT,

      Defendants
_____/

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND COMPENSATORY RELIEF

COME NOW the Plaintiffs, R/S Associates, a Florida limited partnership (hereinafter "R/S") and Dan Shooster (hereinafter "Shooster") (sometimes jointly referred to as "Plaintiffs"), by and through their undersigned counsel, and for their First Amended Complaint against Robert Yari (hereinafter sometimes referred as "Yari"), Forum Arlington Properties, Ltd. (hereinafter sometimes referred to as "Forum") and Alliance Commercial Management ("Alliance") ("Yari","Forum" and "Alliance" hereinafter sometimes referred to as "Defendants") would state as follows:

### THE PARTIES

1.    Plaintiff Shooster is an individual with his principal place of business located at 2900 West Sample Road, Pompano Beach, Broward County, Florida 33073.

2.    Plaintiff R/S Associates is a Florida Limited Partnership with its principal place of business located at 2900 West Sample

**EXHIBIT _A_**

Road, Pompano Beach, Broward County, Florida 30073.

3.   Defendant Yari is an individual with his principal place of business located at 10850 Wilshire Boulevard, Suite 1050, Los Angeles, California 90024.

4.   Defendant Forum is a business with its principal places of business located at 10850 Wilshire Boulevard Suite 1050, Los Angeles, California 90024 and/or 2900 East Pioneer Parkway, Suite 615, Arlington, Texas 76010.

4a.  Defendant Alliance is a business with its principal places of business located at 10850 Wilshire Boulevard Suite 1050, Los Angeles, California 90024 and/or 2900 East Pioneer Parkway, Suite 615, Arlington, Texas 76010.

**JURISDICTION AND VENUE**

5.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338 and 15 U.S.C. § 1121, because this action arises under 15 U.S.C. § 1114 and § 1125(a).  This Court has jurisdiction over Plaintiffs' state-law claims under the doctrine of pendent jurisdiction.

6.   Venue in this action lies in the Southern District of Florida under the provisions of 28 U.S.C. § 1391(b) as this is the jurisdiction wherein the claims arose and wherein the parties met and entered into various agreements which form the background for this action.

**Background**

7.   Shooster is a executive in R/S.

8.   R/S operates the "Festival Flea Market" which is located

at 2900 West Sample Road, Pompano Beach, Florida.

9.    The Festival Flea Market, when originally created, was a unique blend between a flea market and a traditional mall or shopping center which previously did not exist elsewhere in the business world.

10.    The Plaintiffs and Defendants had a series of meetings in 1997 and 1998 wherein the Defendants proposed that the unique Festival Flea Market concept that the Plaintiffs had created be expanded to locations outside of Pompano Beach, Florida.

11.    Specifically, the Defendants proposed that the Festival Flea Market concept be applied to a shopping center which the Defendants operated in the Arlington, Texas area.

12.    To accomplish this end, Plaintiffs and Defendants engaged in numerous discussions wherein the parties would attempt to enter into some sort of a joint venture relationship for the benefit of the Plaintiffs and the Defendants.

13.    Ultimately, it was decided that the Plaintiffs would provide various expertise to the Defendants on how to create a Festival Flea Market concept like the one in Pompano Beach, Florida in exchange for certain compensation.

14.    Attached hereto as Exhibit "A" is a letter dated November 2, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of Fifty Thousand Dollars ($50,000.00) within six (6) months of said letter in exchange for organizing various marketing efforts. Said monies have not been paid as of this date.

FRIEDMAN, ROSENWASSER & GOLDBAUM. THE PLAZA · SUITE 801. 5355 TOWN CENTER ROAD. BOCA RATON, FLORIDA 33486

15. Attached hereto as Exhibit "B" is a letter dated March 5, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of One Hundred Thousand Dollars ($100,000.00) for consulting services regarding a mall in the Arlington, Texas area, once the mall is operational and positive cash flows are generating. Defendant Forum has not paid said One Hundred Thousand Dollars ($100,000.00) to Shooster as of this date.

16. Plaintiff Shooster has provided all goods and services required of the Exhibit "A" November 2, 1998 letter and Exhibit "B" March 5, 1998 letter.

17. The Arlington Mall/property is operational and positive cash flow is either being generated or should be generated by this time.

18. Plaintiffs and Defendants continued to negotiate to try to enter into some sort of a joint venture agreement for the mall/property being operated by Defendants in the Arlington, Texas area; but no joint venture or other agreement was ever reached between Plaintiffs and Defendants.

19. On or about September 27, 1999, counsel for Plaintiffs sent a notice to Defendants, a copy of which is attached herein as Exhibit "C" wherein Plaintiffs demanded that Defendants pay Plaintiff Shooster the sum of One Hundred Thousand Dollars ($100,000.00); Plaintiff R/S the sum of Fifty Thousand Dollars ($50,000.00) and cease and desist from using the tradenames and trademarks of "Festival Flea Market Mall" and "Festival Marketplace Mall" on or before November 7, 1999 unless the parties are able to

enter into some sort of License Agreement or other arrangement to allow continued use of said trademarks and tradenames.

20.   Plaintiffs and Defendants have never been able to enter into any agreement whereby Defendants would have the continued right to use any of Plaintiffs' trademarks or tradenames after November 7, 1999.

21.   Defendants have never paid Plaintiff Shooster the One Hundred Thousand Dollars ($100,000.00) due him or Plaintiff R/S the Fifty Thousand Dollars ($50,000.00) due them.

22.   Defendants continue to use the trademarks, tradenames, trade dress and confusingly similar tradenames and trademarks to that of Plaintiffs.

23.   Defendants have no authority to use the trademarks, tradenames, trade dress or other items of the Plaintiffs at this time.

23a.  Defendant Alliance is the owner and/or manager of the Arlington Mall that is the subject matter of the aforedescribed dispute.

## COUNT I
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

24.   Plaintiffs reincorporate paragraphs 1 through 23a as if same were more fully set forth herein.

25.   Plaintiffs currently own numerous Federal and Florida trademarks as more clearly set out in Composite Exhibit "D", a copy of which is attached hereto.

26.   Because Defendants never entered into a Trademark License Agreement or any other agreement with the Plaintiffs, Defendants

are barred from using any of Plaintiffs trademarks, tradenames, trade dress or anything confusingly similar therewith.

27. At this time, Defendants are using the tradenames, trademarks and/or trade dress or tradenames or trademarks confusingly similar thereto for their mall located in the Arlington, Texas area.

28. By reason of the foregoing, Defendants have infringed and threatened to continue the infringement of Plaintiffs registered trademarks in violation of 15 U.S.C. § 1114 and Defendants' actions also constitute unfair competition under 15 U.S.C. § 1125 (a).

29. Defendants' conduct has subjected and will continue to subject Plaintiffs' rights and its marks to irreparable injury, for which Plaintiffs have no adequate remedy at law.

30. Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to injunctive relief, an accounting of Defendants' profits, treble damages, royalties, and to recover their reasonable attorneys' fees incurred in this action.

<u>**COUNT II**</u>
<u>**BREACH OF CONTRACT**</u>

31. Plaintiffs reincorporate paragraphs 1 through 23a as if same were more fully set forth herein.

32. Defendants have materially breached the Exhibit "A" and "B" Agreements by not paying Plaintiff Shooster One Hundred Thousand Dollars ($100,000.00), not paying Plaintiff R/S Fifty Thousand Dollars ($50,000.00) and not ceasing and desisting from using Plaintiffs' trademarks, tradenames, trade dress and/or confusingly similar trademarks or tradenames after November 7,

51Shooster\AMComplaint\2-1-2000\kag5ds                6

1999.

33.    By reason of the forgoing, Plaintiffs are entitled to: a Declaration that Defendants owe royalty fees to Plaintiffs for use of Plaintiffs trademarks, tradenames, trade dress and/or using confusingly similar trademarks or tradenames; an accounting as to what benefits Defendants have received by improperly using Plaintiffs trademarks, tradenames, trade dress and/or confusingly similar trademarks or tradenames; full payment of the Fifty Thousand Dollars ($50,000.00) owed to Plaintiff R/S; full payment of the One Hundred Thousand Dollars ($100,000.00) owed to Plaintiff Shooster and to other damages and/or amounts owed caused by Defendants' material breaches of the Exhibit "A" and "B" Agreements, plus interest.

**REQUEST FOR RELIEF**

34.    WHEREFORE, Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster, respectfully request this Honorable Court grant the following relief:

A.    That the Court temporarily and permanently enter an Injunction enjoining Defendants Robert Yari and Forum Arlington Properties, Ltd., or their agents, servants, employees and those acting by and under them, from the following:

    (1)    Using the "Festival Marketplace Mall" #3101 trademark;

    (2)    Using the "Festival Marketplace Mall/Logo" #3102 trademark;

    (3)    Using the Winners! Arcade/Design #3103 trademark;

    (4)    Using the Winners! Arcade/Design #3121 trademark;

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

(5)   Using the Festival Marketplace #3104 trademark;

(6)   Using the Festival Marketplace #3105 trademark;

(7)   Using the Shopaholic #3112 trademark;

(8)   Using the Festiventures #3120 trademark;

(9)   Using the Festiventures #3112 trademark;

(10) Using the Fesitvalue #3111 trademark;

(11) using the Festivalue #3119 trademark;

(12) Using the Fleabytes #3110 trademark;

(13) Using the Fleabytes #3118 trademark;

(14) Using the Flea Market Mall #3117 trademark;

(15) Using the Festival Flea Market Mall #3108 trademark;

(16) Using the Festival Flea Market/Design #3107 trademark;

(17) Using the Festival Flea Market/Design #3115 trademark;

(18) Using the Flea T.V. #3106 trademark;

(19) Using the Flea T.V. #3114 trademark;

(20) Using the Festival Marketplace/Design #3123 trademark; and

(21) International Festival Center trademark.

B.   That the Court enter a Declaratory Judgment finding that Defendants are not entitled to use any of the trademarks, tradenames or trade dress of the Plaintiffs;

C.   That the Court enter an accounting of all profits Defendants earned during the period of their trademark, tradename or trade dress infringement and award same to Plaintiffs pursuant to 15 U.S.C. § 1117(a) and that the Court further enter Judgment in favor of Plaintiffs for monetary damages in an amount equal to

three times Defendants' profits during infringement, pursuant to 15 U.S.C. §1117(b), plus reasonable royalties and other additional compensation that the Court finds just and equitable under the circumstances of this case;

D.    That Plaintiffs be awarded Judgment in the amount of their actual damages sustained by reason of the conduct of the Defendants;

E.    That the Court grant Plaintiffs' reasonable attorneys' fees in connection with this Complaint pursuant to Florida Statutes Annotated Chapter 57; to 15 U.S.C. § 1117, and to other law;

F.    That the Court award Plaintiff Shooster the sum of One Hundred Thousand Dollars ($100,000.00);

G.    That the Court award Plaintiff R/S the sum of Fifty Thousand Dollars ($50,000.00); and

H.    That Plaintiffs be awarded such other and further relief as this Honorable Court deems just and proper.

Dated:    2/1/00

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Road #801
Boca Raton, Florida 33486
Tel: (561) 395-5511
Fax: (561) 368-9274

by: _____
KEITH A. GOLDBAUM, ESQUIRE
FBN 0475637

FESTIVAL    ID:9549683980    APR 15'99   16:46 No.003 P.08

## *FORUM ARLINGTON PROPERTIES, LTD.*

18158 Wilshire Blvd., Suite 1016, Los Angeles, CA 90036

November 2, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

<u>VIA TELECOPIER</u>

Re:    Festival/Dallas

Dear Dan:

Pursuant to our discussion, this letter shall confirm our agreement relating to the use of your Festival logo and advertising (as set forth in my November 7, 1997 letter to you, modified by letter dated November 28, 1997). We shall extend the rights granted for an additional year. Additionally, we shall have the right to use two new TV spots created for you by Beber/Siverstein titled "comps", indefinitely. In return we agree to pay you the sum of $50,000 within 6 months of this date. $49,000 shall be allocated to production costs you have paid for the new ads and $1,000 shall be allocated to the continuation of the logo license.

And finally, pursuant to your request, the following are current costs incurred on the Dallas Festival. These costs are approximate and the costs are continuing as we finalize construction and carry negative operating income until stabilization.

| | |
|---|---|
| Current loan x 50% | $1,400,000 |
| Capital to-date x 50% | $1,600,000 |
| New $1m loan x 50% | $  500,000 |
| Partner buy-out x 100% | <u>$1,900,000</u> |
| | |
| Total cost of 50% | $5,400,000    (of this amount, $1,900,000 is currently financed)<br>(this amount does not include carry on capital) |

I look forward to continuing our discussions towards a mutually beneficial venture. Also, please don't forget to discuss the overall participation with Harry. I am eager to know your collective thoughts on that issue.   Best regards to you and the family.

Sincerely,

Bob Yari

# EXHIBIT ___A___



## FORUM ARLINGTON PROPERTIES, LTD.  10860 Wilshire Blvd. Suite 1260 Los Angeles, CA 90024

an option to give up your shares and regain the name rights granted in the event an agreed upon number of projects have not been acquired by a certain date.

ID:9549683980

FESTIVAL

**FORUM ARLINGTON PROPERTIES, Ltd.**  10850 WILSHIRE BOULEVARD, SUITE 1060, LOS ANGELES, CA 90024

March 5, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

<u>VIA TELECOPIER</u>

Re:   Festiventures/ Festival Marketplace

Dear Dan:

Pursuant to our discussion, <u>this letter shall confirm my agreement relating to your consulting services with respect to the Festival Marketplace Mall</u> and our general understanding regarding our potential joint venture.

<u>Over and above the commitments set forth in the November 7, 1997 letter, Festival Marketplace, Ltd. Shall pay you the sum of $100,000 for your consulting services up through opening and stabilization (approximately three months) of the mall.  We have agreed that this sum will be payable once the mall is operational and positive cash flows are generating.</u>  I truly appreciate your understanding in this respect as this will allow the current availability of funds to be concentrated on the construction, marketing and leasing efforts.

Additionally, as we are contemplating our joint venture and I await draft agreements from your attorney, we shall both move forward with efforts to procure venture capital financing in the interim as long as no liability or cost accrues to you prior to full execution of an agreement.  This agreement will contain a provision which provides that you will be entitled to 10% ownership in the venture at no cost, should you not desire to participate financially in the equity requirements.  And finally, we both agree to use good faith efforts to gain one another an equity purchase opportunity in each of our respective Festival Malls.

I hope this accurately summarizes our discussions.  Please do not hesitate to contact me if anything is contrary to your understanding.  I look forward to seeing you and Leslee in Dallas.  Best regards.

Sincerely,

Bob Pari

# EXHIBIT  B

September 27, 1999

<u>CERTIFIED MAIL RETURN RECEIPT REQUESTED</u>
Robert Yari
Forum Arlington Properties, Ltd.
10850 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90024

Re:     <u>Expiration of Right to Use Trademarks</u>
        Our File: 5477.3100

Dear Mr. Yari:

As you know this firm represents Dan Shooster and his business in trademark matters. I write to remind you that your trademark rights expire shortly. As you agreed in your letter to Dan Shooster dated November 2, 1998, whatever limited right you may have enjoyed to use our client's trademarks (the "Trademarks")—including, without limitation, *Festival Flea Market Mall* and *Festival Marketplace Mall*, expires on November 7, 1999. Likewise, any right to use any advertising or other materials containing the Trademarks expires at such time. Please note that notwithstanding the expiration of your license rights, the indemnities that you extended to our client in your March 19, 1998, letter continue in effect and survive such expiration.

Unless you want to enter a formal license agreement in accordance with the instructions set forth below, on or before November 7, 1999, you are reminded that as of such date, under federal law, you must on such date:

- cease using the Trademarks and any colorable imitations thereof, including all materials containing the Trademarks;

- cancel any assumed-name registrations pertaining to any of the Trademarks (including, without limitation, any such registration pertaining to an assumed name incorporating any of the Trademarks);

- amend your company name if it incorporates any of the Trademarks; and

# EXHIBIT _____ C

September 27, 1999
Robert Yarl
Page 2

- take any further actions our client may reasonably require to avoid any actual or potential public confusion concerning the parties' respective businesses.

The foregoing obligations are not exclusive of our client's other rights, all of which it reserves.

As you may know, Mr. Shooster hold federal registrations for his mark under the Federal Lanham Act. The Act requires Mr. Shooster, as a condition of his registrations, both to control the use of his marks, and to prevent the unauthorized use of his marks. Consequently, we have warned Mr. Shooster that he must take steps to prevent the continued use by you of the marks after any license rights you have expire on November 7, 1999, to satisfy his federal legal obligations.

If you desire to enter a license agreement to use the Trademarks, you may do so by satisfying all of the following conditions by no later than November 7, 1999:

- notify our firm in writing of your intention to renew;

- pay R/S Associates and Daniel Shooster all amounts you currently owe them respectively, including, without limitation, $51,000 (which includes the $1,000 initial fee never paid) to R/S Associates and $100,000 to Mr. Shooster (please note that there are amounts in addition to this sum that you owe Mr. Shooster); and

- enter our client's form of trademark license agreement.

In any event, the amounts you owe R/S Associates and Daniel Shooster are over due and must still be paid. Mr. Shooster may consider granting you the right to pay the amounts owed to R/S Associates in monthly payments of $5,000, starting October 1, until paid in full, if you otherwise pay the personal amounts owed to him now. He makes this gesture in light of your prior offer of July to make payments on a monthly basis. Under that offer, your proposed monthly payments would have unduly delayed the payment to him that he has told you he wants personally to apply to some matters he has pending. Those payments from you are long overdue. You should be aware that Mr. Shooster has avoided numerous collection attempts as a courtesy to you and to avoid overburdening you. Mr. Shooster seeks the payment to him personally as a gesture of your own good faith and commitment. At this point that your license is expiring, it is imperative to finalize these matters.

To pursue a formal licensing program or otherwise discuss your trademark commitments, please contact me directly. I will be happy to discuss any questions or comments you may have. If you prefer to communicate by e-mail, my address is RRosenwasser@Lawmind.com. To avoid any delay in understanding your intentions, I would appreciate you contacting me at your earliest convenience, and in no event later than September 30, 1999.

S477Ltr-Yar\LicenseAgreementExpiration1
8.28.9002:284.13.99 11:04:38

September 27, 1999
· Robert Yari
Page 3

Sincerely,

Ronald N. Rosenwasser

cc.:    Daniel Shooster

5477\Misc-Trademark\Chart2.doc
\12.28.99 14:58.3 7121:599  10:000\32699 09:00

## TRADEMARK STATUS REPORT-R/S ASSOCIATES
## AS OF DECEMBER 15, 1999

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace Mall #3101 | 35: Preparing and placing advertisements for others; dissemination of advertising matter on behalf of vendors<br><br>36: Leasing of market space in a multi-tenanted marketplace | 75/439,184 | Oct. 12, 1999<br>Oct. 12, 2005<br>Oct. 12, 2009 | Federal |
| Festival Marketplace Mall/Logo #3102 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed materials regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in a multi-tenanted marketplace | T990000000451 | April 16, 1999 | Florida |
| Winners! Arcade/Design #3103 | 41: Video game arcade services and providing party planning services and facilities | 2,285,10' | Oct. 12, 1999<br>Oct. 12, 2005 | Federal |
| Winners! Arcade/Design #3121 | 42: Video arcade, games and party services | T980000000910 | Aug. 4, 1998-<br>Aug. 4, 2008 | Florida |



EXHIBIT D

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace #3104 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace<br><br>36: Leasing of Flea Market space | 2,229,205 | Mar. 2, 1999-<br>Mar. 2, 2005-<br>Mar. 2, 2009 | Federal |
| Festival Marketplace #3105 | 35: : Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | T9600001373 | Dec. 10, 1996-<br>Dec. 10, 2006 | Florida |
| Shopaholic #3112 | 42: Offering membership in an association to person who purchase a certain dollar volume of merchandise from a multi-tenanted marketplace; Members will be provided special shopping courtesies, discounts, special sales events and a newsletter | T9600001374 | Dec. 10, 1996-<br>Dec. 10, 2006 | Florida |
| Festiventures #3120 | 35: Business consultation services geared toward persons who want to create specialized retail market-places; preparing advertising for persons who operate specialized retail marketplaces | 2,097,593 | Sept. 16, 1997-<br>Sept. 16, 2003-<br>Sept. 16, 2007 | Federal |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festiventures 3112 | 35: Consulting services to persons who want to create specialized retail marketplaces; preparing advertising for persons who operate specialized retail marketplaces | T96000001093 | Sept. 24, 1996- Sept. 24, 2006 | Florida |
| Festivalue #3111 | 35: Promoting and advertising the goods being sold by vendors in a multi-tenanted marketplace by providing discount vouchers; advertising services, namely, providing advertising space in a periodical of the goods and services being provided by retail vendors | 2, 097,592 | Aug. 16, 1997- Aug. 16, 2003- Aug. 16, 2007 | Federal |
| Festivalue #3119 | 35: Preparing advertising for vendors in a multi-tenanted marketplace and preparing advertising for owner of said marketplace | T96000001089 | Sept. 18, 1996- Sept. 18, 2006 | Florida |
| FLEABYTES #3110 | 35: Promoting the goods and services of others by providing advertising and information through a listing or sublisting on a national computer network | 2,044,577 | Mar. 11, 1997- Mar. 11, 2003- Mar. 11, 2007 | Federal |
| FLEA BYTES #3118 | 42: Operating an information link on the Internet | T96000001091 | Sept. 18, 1996 Sept. 18, 2006 | Florida |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea Market Mall #3117 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | T960000001092 | Sept. 18, 1996<br><br>Sept. 18, 2006 | Florida |
| Festival Flea Market Mall #3108 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | 1,958,606 | Feb. 27, 1996-<br>Feb. 27, 2002-<br>Feb. 27, 2006 | Federal |
| Festival Flea Market/Design #3107 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of Flea Market Space | 1,948,221 | Jan. 16, 1996-<br>Jan. 16, 2002-<br>Jan. 16, 2006 | Federal |
| Festival Flea Market/Design #3115 | 36: | T15036 | Sept. 23, 1991<br>Sept. 23, 2001 | Florida |
| Flea T.V. #3106 | 35: Promoting the goods and services of others by providing advertising on a television shopping show | 2,018,022 | Nov. 19, 1996-<br>Nov. 19, 2002-<br>Nov. 19, 2006 | Federal |

4

5477\Msc-Tradcmrk\Chart2.doc
\12.28.99 14.58.37\121599  10.000\32699  09.00

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea T.V. #3114 | 35: Preparing television advertising for vendors in a multi-tenanted marketplace and preparing advertising for the owner of the marketplace | T96000001090 | Sept. 18, 1996 Sept. 18, 2006 | Florida |
| Festival Marketplace /Design #3123 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace | 75/669,681 | | Federal |
| | 36: Leasing of market space in multi-tenanted marketplace | | | |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| International Festival Center | Third party application | 75/377,290 | ITU Application | Federal |

5

# FESTIVAL
## MARKETPLACE MALL

# IT'S A BIG WORLD
## IN HERE.

**FESTIVAL**

ARLINGTON

- FREE PARKING ■ FREE ADMISSION
- WHEELCHAIRS ■ STROLLERS ■ DIAPER DECKS
- GIFT CERTIFICATES

360 AT PIONEER PARKWAY – ARLINGTON
HEART OF THE METROPLEX
OPEN WED. - FRI. 10:00 AM - 7:00 PM
SAT. 10:00 AM - 8:00 PM
SUN. 12:00 NOON - 6:00 PM

(817) 649-8065

Into the Festival Marketplace Mall. And discover the new world. With over 500 merchants selling brand merchandise at below outlet prices, it's bargain-hunter's paradise. There are also a few selected treats – like our full-service beauty salon, arcade, 6-screen movie theater and our national Food Court. It's worlds apart from anything you've seen before and it's all just minutes away. Step out of the ordinary and into the unique shopping experience of the Festival Marketplace Mall.

el Festival Marketplace Mall y descubra todo un mundo nuevo. En este paraíso de los amantes de ofertas, más de 500 comerciantes venden artículos de marca a precios más bajos que los del mercado. Y hay atracciones que no esperaba – por ejemplo, un salón de belleza que ofrece todo tipo de servicios, sala de video, una sala cinematográfica de 6 pantallas y una Galería Internacional de Restaurantes. Es totalmente diferente a lo que haya visto antes, y se encuentra a pocos minutos de distancia. Así que sálgase de la rutina y disfrute recorriendo las tiendas del Festival Marketplace Mall.

...z le Festival Marketplace Mall et vous découvrirez un monde entièrement nouveau. Avec plus de 500 marchands vendant des marchandises de marque à des prix inférieurs au prix de détail, c'est vraiment le paradis pour les amateurs de bonnes affaires. Quelques surprises également, comme notre salon de beauté, notre galerie de jeux vidéo, notre salle à six salles et notre Galerie de Restauration Internationale. Un monde de différence par rapport à tout ce que vous avez vu auparavant et à quelques minutes seulement. Sortez de l'ordinaire pour faire une chose d'unique au Festival Marketplace Mall.

...chen Sie die Festival Marketplace Mall. und entdecken Sie eine völlig neue Welt – ein wahres Einkaufsparadies. In dem mehr als 500 Händler Markenware zu Preisen verkaufen, die noch unter dem Großhandelspreis liegen. Eine wahre Freude. Außerdem erwarten Sie hier auch einige überraschende Extras. wie etwa unser Schönheitssalon mit vollem Serviceangebot, eine Spielarkade, ein Kino mit 6 Leinwänden und unser internationaler Imbißbereich. Sie fühlen sich in eine andere Welt versetzt – so etwas haben...



**HOMEMAKERS** Crystal, linens, dishes, appliances, fine art, furniture, fresh flowers, chocolates, cameras, sunglasses radio headsets, souvenir **BREATHTAKER**

**SHOPAHOLICS** Purses, ATM bank machine, over 500 merchants, backpacks, collectibles, electronics,

Designer fragrances, cosmetics, lingerie, hosiery, the latest designer fashions,

**WORKAHOLICS** Beepers, phones, suits, ties, belts, shoes, briefcases, and luggage. **HOMEBODIES** Computer software,

men's fashions, hats, boots, cigars, tuxedos, loungewear, leather jackets, and wallets. **BARGAIN HUNTE!**

VCRs, videos, recliners, TVs, books, magazines, tools and hardware,

Costume jewelry, hand-bags, t-shirts, sundries, unusual gift items, candies, baskets, silk flower arrangements and much, much more. **THINGS FOR BI**

**AND LITTLE KIDS** Rollerblades, golf clubs, sportswear, exercise equipment.

**HIGHROLLERS** Gold jewelry, watc

tennis racquets, name-brand athletic shoes, kids

stuffed animals, candy, toys galore.

hand-held video games ------ **PLUS AN INTERNATIONAL FOOD C**

**FULL-SERVICE BEAUTY SALON, A 6-SCREEN MOVIE THEATER, FARMER'S**

FESTIVAL



# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTDLs |

 

(1 of 2)

Check Status



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* MALL |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-603926 |
| **Registration Number** | 1958606 |
| **Filing Date** | 11/28/1994 |
| **Registration Date** | 02/27/1996 |
| **Design Search Code** | 02.01.33; 02.09.05; 19.07.11; 26.11.07; 26.11.12; 26.11.13 |
| **Description of Mark** | The mark consists of an abstract person outlined in white, running with a shopping bag in each hand against a colored background. The words "*FESTIVAL FLEA MARKET* MALL" appear in a mixture of styled block print and regular print underneath.; The mark is lined for the colors red and blue. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET* MALL" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 12/05/1995 |
| **Type of Mark** | SERVICE MARK |

| | |
|---|---|
| **International Class** | 035 |
| **Goods and Services** | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

---

| | |
|---|---|
| **International Class** | 036 |
| **Goods and Services** | leasing of *flea market* space; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

---

 

(1 of 2)



# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTDLs |
|------|------|-------|---------|--------|--------|-----------|-------|

 

**(2 of 2)**

**Check Status**



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-548598 |
| **Registration Number** | 1948221 |
| **Filing Date** | 07/05/1994 |
| **Registration Date** | 01/16/1996 |
| **Design Search Code** | 29.01.07 |
| **Description of Mark** | The mark consists of the term "*FESTIVAL*", colored in a multi-colored mosaic-like pattern and the words "*FLEA MARKET*" separated by a small comet-like design.; The drawing is lined for the colors green, yellow, red, blue and orange and color is claimed as a feature of the mark. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET*" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 10/24/1995 |
| **Type of Mark** | SERVICE MARK |
| **International Class** | 035 |

| | |
|---|---|
| **Goods and Services** | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |
| **International Class** | 036 |
| **Goods and Services** | leasing of *flea market* space; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |

 

(2 of 2)

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6023 CIV-Hurley
Magistrate Lynch

R/S Associates, a Florida limited
partnership, and Dan Shooster,

       Plaintiffs

vs.

Bob Yari, Forum Arlington Properties, Ltd.,
and Alliance Management Co., LLC,

       Defendants

_____/

## DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW

COME NOW, the Defendants, Bob Yari, Forum Arlington Properties, Ltd. and Alliance Management Co., LLC, to file this limited appearance for purposes of contesting the Court's jurisdiction over the Defendants pursuant to Fed. R. Civ. P. 12(b)(6). In support of their motion, Defendants state:

1.    The First Amended Complaint does not allege that the Defendants maintain continuous contacts in the Southern District of Florida. On the contrary, Plaintiffs admit that Bob Yari is an individual whose principal place of business is located in Los Angeles, California, that Forum Arlington Properties, Ltd. ("Forum") has its principal place of business is either in California or Texas and that Alliance Commercial Management (which is actually known as Alliance Management Co., LLC ("Alliance")) has its principal place of business in


EXHIBIT ß

either California or Arlington, Texas. First Amended Complaint for Injunctive, Declaratory and Compensatory Relief, at ¶¶3-4a ("First Amended Complaint").

2.      In the First Amended Complaint, Plaintiff alleges venue is proper in this District because the claim arose here and the parties met and entered into various agreements which form the background for this action here. First Amended Complaint, ¶6.

3.      Attached hereto as Exhibit A and incorporated herein by reference is the Affidavit of Bob Yari on behalf of himself and Defendants Forum and Alliance. As Mr. Yari's Affidavit makes clear, neither he, nor Forum or Alliance has any presence in or contact with the State of Florida.

4.      While Bob Yari acknowledges having visited the State of Florida to view a site in Pompano Beach, and to meet with Plaintiff, Dan Shooster, those activities are not, as a matter of law, sufficient to vest this Court with personal jurisdiction over the Defendants.

5.      Inasmuch as the Defendants have filed a motion and affidavit challenging the Court's jurisdiction over them, Plaintiffs now bear the burden of establishing that the Court has jurisdiction over Defendants.

6.      Defendants submit that Plaintiffs cannot establish the minimum contacts between Defendants and the State of Florida which are prerequisite to the exercise of jurisdiction over them.

WHEREFORE, Defendants, Bob Yari, Forum Arlington Properties, Ltd. and Alliance Management Co., LLC, respectfully request this Court to dismiss the First Amended

2

Complaint with prejudice for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(6).

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

When a federal court exercises diversity jurisdiction, it is bound by the same due process limitations on the exercise of jurisdiction over out of state defendants as are the courts of the forum state. Charlie Fowler Evangelistic Association, Inc. v. Cessna Aircrafters Co., 911 F.2d 1564, 1565 (11th Cir. 1990). Defendants must have and maintain certain "minimum contacts" with the State of Florida so that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 456 (1940)). These minimum contacts cannot be accidental or fortuitous. Rather, the defendants must have availed themselves "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 472, 475 (1985) (quoting Hanson v. Denckla, 357 US 235, 253 (1958). Although the defendants need not be physically present in Florida, their efforts must have been "purposefully directed" toward residents of the State of Florida. Burger King, 471 U.S. at 475.

As the attached Affidavit makes clear, Defendants Yari, Forum and Alliance do not have minimum contacts with the State of Florida. Although Mr. Yari traveled to Florida first to view a site in Pompano Beach and then to meet with Mr. Shooster, those trips are not sufficient to establish jurisdiction over the Defendant's person. Jet Charter Service, Inc. v. Koeck, 907 F.2d 1110, 1113 (11th Cir. 1990). The existence of a contractual relationship between the non-resident

3

Defendants and the Plaintiff is not sufficient to meet due process requirements. <u>Jet Charter Service</u>, 907 F.2d at 1113. Rather, the Defendants' conduct in connection with the State of Florida had to be such that the Defendants reasonably should have anticipated being called into court here.

The random, fortuitous and attenuated contacts admitted in the Affidavit of Mr. Yari are not such that the Defendant could have anticipated being subject to personal jurisdiction in a court in Florida. <u>Jet Charter Service</u>, 907 F.2d at 1113, citing <u>Burger King</u>, 471 U.S. at 462. The alleged contract between the Plaintiffs and Defendants in this case was to have been executed in Texas. <u>See</u> First Amended Complaint, ¶15 (the consulting services provided by Plaintiff concerned a mall in the Arlington, Texas area); ¶11 ("the Defendants proposed that the Festival Flea Market concept be applied to a shopping center which the Defendants' operated in the Arlington, Texas, area.")

As a matter of law, it would violate traditional notions of due process for the Defendant to be required to defend a suit here. Accordingly, the First Amended Complaint should be dismissed for lack of jurisdiction over the Defendants.

[CERTIFICATE OF SERVICE APPEARS ON THE FOLLOWING PAGE]

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing instrument has been furnished by

U.S. mail to Keith A. Goldbaum, Esquire, Friedman, Rosenwasser & Goldbaum, P.A., 5355

Town Center Road, Suite 801, Boca Raton, Florida 33486, this 17 day of February, 2000.

Respectfully submitted,

NASON, YEAGER, GERSON, WHITE & LIOCE, P.A.
1645 Palm Beach Lakes Boulevard, Suite 1200
West Palm Beach, Florida  33401
Telephone:   (561) 686-3307
Facsimile:   (561) 686-5442
E-mail:       ejames@nygwl.com
Attorneys for Defendant
Florida Bar No.: 791709

By: _____
FOR ELAINE JOHNSON JAMES

H:\6074\13057\PMotionToDismissFirstAmendedComplaint EJJ/co

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6023 CIV-Hurley
Magistrate Lynch

R/S Associates, a Florida limited
partnership, and Dan Shooster,

      Plaintiffs

vs.

Bob Yari, and Forum Arlington
Properties, Ltd., and Alliance Management Co., LLC

      Defendants

_____/

### AFFIDAVIT OF BOB YARI

STATE OF CALIFORNIA      )
                       ) SS:
COUNTY OF LOS ANGELES  )

Bob Yari, being duly sworn according to law deposes and says:

1.    I am over the age of 21 years and otherwise competent to complete this affidavit.

2.    I am the president of Forum General Inc., a Texas corporation.

3.    Forum General Inc. is the general partner of the Defendant, Forum Arlington Properties, Ltd.

4.    Forum Arlington Partners, Ltd. is a registered Texas partnership, which is involved in the business of real estate and does not own any property outside of the State of Texas.

**Exhibit "A"**

5.    I am a member of Defendant, Alliance Management Co., LLC, which is a California limited liability corporation.

6.    I reside in the State of California.

7.    Neither I, nor Forum Arlington Properties, Ltd., or Alliance Management Co., LLC: owns or has owned real property in the State of Florida; has or has had a bank account in the State of Florida; does or has done business in the State of Florida; provides or has provided services in the State of Florida; sells or has sold goods in the State of Florida; has or has had a registered agent in the State of Florida; has or has had an office in the State of Florida; has or has had a sales agent in the State of Florida; or directs or has directed any activity to the State of Florida.

8.    I have attended two or three meetings in Florida. For example, on December 15, 1995, I visited the Festival Flea Market in Pompano Beach, Florida, and met with the Plaintiff, Dan Shooster, and on October 2, 1997 I met with a banker from Houston,Texas who was contemplating whether to finance the construction in Dallas, Texas, of a flea market similar to the Festival Flea Market.

9.    While in Florida, I did not negotiate a contract, and I did not sign any documents .

10.    The documents that are attached as exhibits to the Amended Complaint, which bear my signature, were signed in California and sent by facsimile to Dan Shooster in Pompano Beach, Florida.

11.    The joint venture referred to in Exhibit B to the Amended Complaint was to take place in Dallas, Texas. No business of the joint venture was to be done in Florida.

12.    By filing this Affidavit, I am not submitting either myself, Alliance Management Co., LLC or Forum Arlington Properties, Ltd., to the jurisdiction of the United States District Court for the Southern District of Florida. Rather, this Affidavit is submitted exclusively for the purpose of challenging the Court's personal jurisdiction over the Defendants.

2

13.     The foregoing statements are true, and they are based upon my personal knowledge.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Bob Yari

SWORN TO AND SUBSCRIBED before me this 16Th day of Feb. , 2000, by

Bob Yari, (X) who is personally known to me OR (   ) who produced _____

_____ as identification.

RANIESHA JONES
Commission # 1226751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 28, 2003

_____
Notary Signature

_____
Print Notary Name

NOTARY PUBLIC
State of California at Large

My Commission Expires:

H:\6074\13057\P.AffidavitYari.EJJ/c

3

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6023 CIV Hurley

R/S ASSOCIATES, a Florida
limited partnership and
Dan Shooster,

      **Plaintiff**

vs

BOB YARI, FORUM ARLINGTON
PROPERTIES, LTD., and
ALLIANCE MANAGEMENT CO.,
LLC.
      **Defendants.**

_____/

### AFFIDAVIT OF DAN SHOOSTER

COUNTY OF _PAlm Beach_
STATE OF FLORIDA

    BEFORE ME, the undersigned authority, personally appeared DAN SHOOSTER who being first duly sworn upon oath, deposes and says:

    1.    That he is over the age of majority, of sound mind and body and has actual knowledge as to all the matters testified to herein.

    2.    That around 1995, Bob Yari came to the Festival Flea Market Mall in Pompano Beach, Florida for the purposes of meeting me to discuss the possibility of Bob Yari and I building additional Festival Flea Markets and locations such as Texas in the future.

    3.    I met with Bob Yari and agents working for Bob Yari several times at the Festival Flea Market Mall in Pompano Beach, Florida.  These Yari agents include:

    a.    Dennis Brown, Chief Financial Officer for Bob Yari on November 10, 1997;

    b.    Willard Hart, Manager for Bob Yari on July 22, 1997;

51Shooster\Affidavit 2\2-25-2000\kag5ds



EXHIBIT C

c.    Shirley Dupre, Leasing Manager for Bob Yari on August 5, 1997; and

d.    Lisa Lee, Promotion Manager for Bob Yari on August 5, 1997.

Additionally, I met with Jack O'Brien on May 30, 1997 who was an architect working for Bob Yari and a banker that was proposing to do business with Bob Yari. I met with Bob Yari's partners named Ebby Jebreel and Cam Mateem on December 4, 1996. I met all these people at the Pompano Festival Flea Market Mall in Pompano Beach, Florida, and during all these meetings discussed that Bob Yari, hopefully with me, wished to enter into agreements to build a Festival Flea Market Mall like the one I had already built in Pompano Beach, Florida.

4.    Yari and/or his agents did solicit numerous tenants of mine at the Pompano Festival Flea Market Mall in an attempt to get them to take stores at the mall he was building in Texas. Some of the merchants solicited included:

a.    Sid's Jewelry;

b.    Adrienne Jewelry;

c.    Dave's Sunglasses; and

d.    Bob Weiner/Scentaments.

5.    We produced a videotape entitled:  "A glimpse of Festival" here in Florida for the purposes of marketing Yari's mall being built in Texas. This videotape was paid for by Yari in Florida.

6.    In fact, we provided several services to Yari, all of which were paid for in Florida.

AFFIANT FURTHER SAYETH NAUGHT.

R/S Associates, a Florida
limited partnership

DAN SHOOSTER, authorized agent

51Shooster.Affidavit.2.2-25-2000\kag5ds                2

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA • SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

DAN SHOOSTER, Individually

COUNTY OF *Palm Beach*

STATE OF FLORIDA

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, DAN SHOOSTER, authorized agent of R/S ASSOCIATES, a Florida limited partnership, who is personally known to me or who has produced a _____ as identification, who acknowledged that he did sign and seal the foregoing instrument for, and on behalf of said Corporation, being thereunto duly authorized by its Board of Directors and that same is his free act and deed as such officer and the free act and deed of said Corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this *28* day of *FEBRUARY*, 2000.

NOTARY PUBLIC

My Commission Expires:

COUNTY OF *Palm Beach*

STATE OF FLORIDA

OFFICIAL NOTARY SEAL
DONNA R SANDERS
COMMISSION NUMBER
CC782048
MY COMMISSION EXPIRES
DEC. 26,2002

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, DAN SHOOSTER, who is personally known to me or who has produced a _____ as identification, who acknowledged that he did sign and seal the foregoing instrument and that same is his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this *28* day of *FEBRUARY*, 2000.

NOTARY PUBLIC

My Commission Expires:

51Shooster\Affidavit.2\2-25-2000\kag5ds

3

OFFICIAL NOTARY SEAL
DONNA R SANDERS
COMMISSION NUMBER
CC782048
MY COMMISSION EXPIRES
DEC. 26,2002