UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6023 CIV HURLEY

R/S ASSOCIATES, a Florida
Limited Partnership and
DAN SHOOSTER

      Plaintiff

vs.

ROBERT YARI and FORUM
ARLINGTON PROPERTIES, LTD. AND
ALLIANCE COMMERCIAL MANAGEMENT,

      Defendants

                              /

**NIGHT BOX
FILED**

JUN 1 3 2000

CLERK, USDC / SDFL / WPB

## PLAINTIFFS' REQUEST FOR AN ORAL HEARING ON PLAINTIFFS' VERIFIED EMERGENCY MOTION FOR TEMPORARY INJUNCTIVE RELIEF

COME NOW the Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster (hereinafter {"Plaintiffs"), by and through their undersigned counsel and for their Request for an Oral Hearing on Plaintiffs' Verified Emergency Motion for Temporary Injunctive Relief would state as follows:

1.    Attached hereto as Exhibit "1" is Plaintiffs' Verified Emergency Motion for Temporary Injunctive Relief and Plaintiffs' Memorandum of Law In Support of Plaintiffs' Verified Emergency Motion for Temporary Injunctive Relief.

2.    Plaintiffs request a thirty (30) minute Oral Hearing to enable their investigator to present evidence as to why Plaintiffs need an Emergency Temporary Injunction.

WHEREFORE, Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster, pray this Honorable Court grant their Request for an Oral Hearing on their Emergency Motion for Temporary Injunctive Relief and/or order such other or further relief as this

9Shooster\Request.OH\6-12-2000\kag5ds

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

Honorable Court deems just and proper.

I HEREBY CERTIFY a copy of the foregoing has been forwarded to Elaine Johnson James, Esquire, Nason, Yeager Gerson, et al, 1645 Palm Beach Lakes Blvd., #1200, West Palm Beach, Fl 33401-2218 this _13_ day of June, 2000.

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Rd. #801
Boca Raton, Fl 33486
Tel: (561) 395-5511
Fax: (561) 368-9274


By: _____
KEITH A. GOLDBAUM, ESQUIRE

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 00-6023 CIV HURLEY

R/S ASSOCIATES, a Florida
Limited Partnership and
DAN SHOOSTER

       Plaintiff

vs.

ROBERT YARI and FORUM
ARLINGTON PROPERTIES, LTD. AND
ALLIANCE COMMERCIAL MANAGEMENT,

       Defendants
_____/

## PLAINTIFFS' VERIFIED EMERGENCY MOTION
## FOR TEMPORARY INJUNCTIVE RELIEF

COME NOW the Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster and hereby file their Verified Emergency Motion for Temporary Injunctive Relief, and in support thereof would state as follows:

1.     Plaintiffs have filed their First Amended Complaint for Injunctive, Declaratory and Compensatory Relief against Defendants, a copy of same being attached hereto as Exhibit "1".

2.     Plaintiffs have actual knowledge that Defendants are actively using Plaintiffs' trademarks, tradenames and trade dress and have had independent people and investigators verify same.

3.  Defendants have no right whatsoever to be utilizing Plaintiffs' trademarks, tradenames or trade dress.

4.     Emergency Relief is required in this matter because Plaintiffs are concerned that

Defendants are confusing consumers and doing business under Plaintiffs' names, and Plaintiffs have a duty to defend their trademarks, tradenames and trade dress, and Plaintiffs failure to defend their trademarks, tradenames and/or trade dress will cause confusion among consumers.

5.    Additionally, failure of this Honorable Court to issue a Temporary Injunction barring Defendants from using Plaintiffs' trademarks, tradenames and trade dress or in any way holding out to the public that Defendants are authorized to use Plaintiffs' trademarks, tradenames or trade dress will cause great confusion amongst consumers.

6.    There is no adequate remedy at law.

7.    The issuance of an Emergency Temporary Injunction is the sole method of preserving the status quo pending this Court's determination of the merits of this cause.

WHEREFORE, Plaintiffs, R/S Associates and Dan Shooster, respectfully request this Honorable Court enter an Emergency Temporary Injunction ordering that Defendants cease and desist from in any way holding out to the public whatsoever that they are authorized to use Plaintiffs' trademarks, tradenames or trade dress and/or order such other and further relief as this Honorable Court deems just and proper.

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Road #801
Boca Raton, Florida 33486
Tel: (561) 395-5511
Fax: (561) 368-9274

DATED: 6-13-2000    by: _KEITH A. GOLDBAUM_

KEITH A. GOLDBAUM, ESQUIRE
FBN 0475637

## VERIFICATION

I, Daniel Shooster, as authorized agent of R/S ASSOCIATES, a Florida Limited Partnership, upon my own personal knowledge, hereby swear and attest that the allegations set forth above in the Verified Emergency Motion for Temporary Injunctive Relief are true and accurate.

R/S ASSOCIATES, a Florida
Limited Partnership

by:
Daniel Shooster
Authorized Agent

by:
Daniel Shooster, Individually

STATE OF FLORIDA
COUNTY OF _Broward_

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, Daniel Shooster, authorized agent of R/S ASSOCIATES, a Florida Limited Partnership, who is personally known to me or who has produced a _____ as identification, who acknowledged that he did sign and seal the foregoing instrument for, and on behalf of said Corporation, being thereunto duly authorized by its Board of Directors and that the same is his free act and deed as such officer and the free act and deed of said Corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal this _8th_ day of ___June___, 2000.

NOTARY PUBLIC _Janice M. Schrul_

My Commission Expires:

_September 18, 2003_

Janice M Schrul
My Commission CC861729
Expires September 18, 2003

61Shooster\Motion.TIR\6-1-2000\kag.5ds2                3

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 8355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

STATE OF FLORIDA
COUNTY OF _*Broward*_

Personally appeared before me, the undersigned, a Notary
Public in and for said County and State, Daniel Shooster,
personally known to me or who has produced a _____ as
identification, who acknowledged that he did sign and seal the
foregoing instrument and that same is his free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official
seal this _6th_ day of _June_, 2000.

NOTARY PUBLIC

My Commission Expires:

_September 18, 2003_

Janice M Schrul
My Commission CC861729
Expires September 18, 2003

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY a copy of the foregoing has been forwarded to Elaine Johnson James, Esquire, Nason, Yeager, Gerson, et al, 1645 Palm Beach Lakes Blvd., #1200, West Palm Beach, Fl 33401-2218 this ___13___ day of ___June___, 2000.

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Rd. #801
Boca Raton, Fl 33486
Tel: (561) 395-5511
Fax: (561) 368-9274

By: _____
KEITH A. GOLDBAUM, ESQUIRE
FBN 0475637

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA - SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6023 CIV HURLEY

R/S ASSOCIATES, a Florida
Limited Partnership and
DAN SHOOSTER

      Plaintiff

vs.

ROBERT YARI and FORUM
ARLINGTON PROPERTIES, LTD. AND
ALLIANCE COMMERCIAL MANAGEMENT,

      Defendants
_____/

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND COMPENSATORY RELIEF

COME NOW the Plaintiffs, R/S Associates, a Florida limited partnership (hereinafter "R/S") and Dan Shooster (hereinafter "Shooster") (sometimes jointly referred to as "Plaintiffs"), by and through their undersigned counsel, and for their First Amended Complaint against Robert Yari (hereinafter sometimes referred as "Yari"), Forum Arlington Properties, Ltd. (hereinafter sometimes referred to as "Forum") and Alliance Commercial Management ("Alliance") ("Yari","Forum" and "Alliance" hereinafter sometimes referred to as "Defendants") would state as follows:

### THE PARTIES

1.    Plaintiff Shooster is an individual with his principal place of business located at 2900 West Sample Road, Pompano Beach, Broward County, Florida 33073.

2.    Plaintiff R/S Associates is a Florida Limited Partnership with its principal place of business located at 2900 West Sample

EXHIBIT

1

Road, Pompano Beach, Broward County, Florida 30073.

3.    Defendant Yari is an individual with his principal place of business located at 10850 Wilshire Boulevard, Suite 1050, Los Angeles, California 90024.

4.    Defendant Forum is a business with its principal places of business located at 10850 Wilshire Boulevard Suite 1050, Los Angeles, California 90024 and/or 2900 East Pioneer Parkway, Suite 615, Arlington, Texas 76010.

4a.    Defendant Alliance is a business with its principal places of business located at 10850 Wilshire Boulevard Suite 1050, Los Angeles, California 90024 and/or 2900 East Pioneer Parkway, Suite 615, Arlington, Texas 76010.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and § 1338 and 15 U.S.C. § 1121, because this action arises under 15 U.S.C. § 1114 and § 1125(a).    This Court has jurisdiction over Plaintiffs' state-law claims under the doctrine of pendent jurisdiction.

6.    Venue in this action lies in the Southern District of Florida under the provisions of 28 U.S.C. § 1391(b) as this is the jurisdiction wherein the claims arose and wherein the parties met and entered into various agreements which form the background for this action.

## Background

7.    Shooster is a executive in R/S.

8.    R/S operates the "Festival Flea Market" which is located

at 2900 West Sample Road, Pompano Beach, Florida.

9.    The Festival Flea Market, when originally created, was a unique blend between a flea market and a traditional mall or shopping center which previously did not exist elsewhere in the business world.

10.    The Plaintiffs and Defendants had a series of meetings in 1997 and 1998 wherein the Defendants proposed that the unique Festival Flea Market concept that the Plaintiffs had created be expanded to locations outside of Pompano Beach, Florida.

11.    Specifically, the Defendants proposed that the Festival Flea Market concept be applied to a shopping center which the Defendants operated in the Arlington, Texas area.

12.    To accomplish this end, Plaintiffs and Defendants engaged in numerous discussions wherein the parties would attempt to enter into some sort of a joint venture relationship for the benefit of the Plaintiffs and the Defendants.

13.    Ultimately, it was decided that the Plaintiffs would provide various expertise to the Defendants on how to create a Festival Flea Market concept like the one in Pompano Beach, Florida in exchange for certain compensation.

14.    Attached hereto as Exhibit "A" is a letter dated November 2, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of Fifty Thousand Dollars ($50,000.00) within six (6) months of said letter in exchange for organizing various marketing efforts. Said monies have not been paid as of this date.

15.  Attached hereto as Exhibit "B" is a letter dated March 5, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of One Hundred Thousand Dollars ($100,000.00) for consulting services regarding a mall in the Arlington, Texas area, once the mall is operational and positive cash flows are generating.  Defendant Forum has not paid said One Hundred Thousand Dollars ($100,000.00) to Shooster as of this date.

16.  Plaintiff Shooster has provided all goods and services required of the Exhibit "A" November 2, 1998 letter and Exhibit "B" March 5, 1998 letter.

17.  The Arlington Mall/property is operational and positive cash flow is either being generated or should be generated by this time.

18.  Plaintiffs and Defendants continued to negotiate to try to enter into some sort of a joint venture agreement for the mall/property being operated by Defendants in the Arlington, Texas area; but no joint venture or other agreement was ever reached between Plaintiffs and Defendants.

19.  On or about September 27, 1999, counsel for Plaintiffs sent a notice to Defendants, a copy of which is attached herein as Exhibit "C" wherein Plaintiffs demanded that Defendants pay Plaintiff Shooster the sum of One Hundred Thousand Dollars ($100,000.00); Plaintiff R/S the sum of Fifty Thousand Dollars ($50,000.00) and cease and desist from using the tradenames and trademarks of "Festival Flea Market Mall" and "Festival Marketplace Mall" on or before November 7, 1999 unless the parties are able to

enter into some sort of License Agreement or other arrangement to allow continued use of said trademarks and tradenames.

20. Plaintiffs and Defendants have never been able to enter into any agreement whereby Defendants would have the continued right to use any of Plaintiffs' trademarks or tradenames after November 7, 1999.

21. Defendants have never paid Plaintiff Shooster the One Hundred Thousand Dollars ($100,000.00) due him or Plaintiff R/S the Fifty Thousand Dollars ($50,000.00) due them.

22. Defendants continue to use the trademarks, tradenames, trade dress and confusingly similar tradenames and trademarks to that of Plaintiffs.

23. Defendants have no authority to use the trademarks, tradenames, trade dress or other items of the Plaintiffs at this time.

23a. Defendant Alliance is the owner and/or manager of the Arlington Mall that is the subject matter of the aforedescribed dispute.

## COUNT I
### TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

24. Plaintiffs reincorporate paragraphs 1 through 23a as if same were more fully set forth herein.

25. Plaintiffs currently own numerous Federal and Florida trademarks as more clearly set out in Composite Exhibit "D", a copy of which is attached hereto.

26. Because Defendants never entered into a Trademark License Agreement or any other agreement with the Plaintiffs, Defendants

are barred from using any of Plaintiffs trademarks, tradenames, trade dress or anything confusingly similar therewith.

27.  At this time, Defendants are using the tradenames, trademarks and/or trade dress or tradenames or trademarks confusingly similar thereto for their mall located in the Arlington, Texas area.

28.  By reason of the foregoing, Defendants have infringed and threatened to continue the infringement of Plaintiffs registered trademarks in violation of 15 U.S.C. § 1114 and Defendants' actions also constitute unfair competition under 15 U.S.C. § 1125 (a).

29.  Defendants' conduct has subjected and will continue to subject Plaintiffs' rights and its marks to irreparable injury, for which Plaintiffs have no adequate remedy at law.

30.  Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to injunctive relief, an accounting of Defendants' profits, treble damages, royalties, and to recover their reasonable attorneys' fees incurred in this action.

<u>COUNT II</u>
<u>BREACH OF CONTRACT</u>

31.  Plaintiffs reincorporate paragraphs 1 through 23a as if same were more fully set forth herein.

32.  Defendants have materially breached the Exhibit "A" and "B" Agreements by not paying Plaintiff Shooster One Hundred Thousand Dollars ($100,000.00), not paying Plaintiff R/S Fifty Thousand Dollars ($50,000.00) and not ceasing and desisting from using Plaintiffs' trademarks, tradenames, trade dress and/or confusingly similar trademarks or tradenames after November 7,

1999.

33. By reason of the forgoing, Plaintiffs are entitled to: a Declaration that Defendants owe royalty fees to Plaintiffs for use of Plaintiffs trademarks, tradenames, trade dress and/or using confusingly similar trademarks or tradenames; an accounting as to what benefits Defendants have received by improperly using Plaintiffs trademarks, tradenames, trade dress and/or confusingly similar trademarks or tradenames; full payment of the Fifty Thousand Dollars ($50,000.00) owed to Plaintiff R/S; full payment of the One Hundred Thousand Dollars ($100,000.00) owed to Plaintiff Shooster and to other damages and/or amounts owed caused by Defendants' material breaches of the Exhibit "A" and "B" Agreements, plus interest.

## REQUEST FOR RELIEF

34. WHEREFORE, Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster, respectfully request this Honorable Court grant the following relief:

A. That the Court temporarily and permanently enter an Injunction enjoining Defendants Robert Yari and Forum Arlington Properties, Ltd., or their agents, servants, employees and those acting by and under them, from the following:

(1) Using the "Festival Marketplace Mall" #3101 trademark;

(2) Using the "Festival Marketplace Mall/Logo" #3102 trademark;

(3) Using the Winners! Arcade/Design #3103 trademark;

(4) Using the Winners! Arcade/Design #3121 trademark;

(5)   Using the Festival Marketplace #3104 trademark;

(6)   Using the Festival Marketplace #3105 trademark;

(7)   Using the Shopaholic #3112 trademark;

(8)   Using the Festiventures #3120 trademark;

(9)   Using the Festiventures #3112 trademark;

(10)  Using the Fesitvalue #3111 trademark;

(11)  using the Festivalue #3119 trademark;

(12)  Using the Fleabytes #3110 trademark;

(13)  Using the Fleabytes #3118 trademark;

(14)  Using the Flea Market Mall #3117 trademark;

(15)  Using the Festival Flea Market Mall #3108 trademark;

(16)  Using the Festival Flea Market/Design #3107 trademark;

(17)  Using the Festival Flea Market/Design #3115 trademark;

(18)  Using the Flea T.V. #3106 trademark;

(19)  Using the Flea T.V. #3114 trademark;

(20)  Using the Festival Marketplace/Design #3123 trademark;
      and

(21)  International Festival Center trademark.

    B.    That the Court enter a Declaratory Judgment finding that
Defendants are not entitled to use any of the trademarks,
tradenames or trade dress of the Plaintiffs;

    C.    That the Court enter an accounting of all profits
Defendants earned during the period of their trademark, tradename
or trade dress infringement and award same to Plaintiffs pursuant
to 15 U.S.C. § 1117(a) and that the Court further enter Judgment in
favor of Plaintiffs for monetary damages in an amount equal to

three times Defendants' profits during infringement, pursuant to 15 U.S.C. §1117(b), plus reasonable royalties and other additional compensation that the Court finds just and equitable under the circumstances of this case;

D.    That Plaintiffs be awarded Judgment in the amount of their actual damages sustained by reason of the conduct of the Defendants;

E.    That the Court grant Plaintiffs' reasonable attorneys' fees in connection with this Complaint pursuant to Florida Statutes Annotated Chapter 57; to 15 U.S.C. § 1117, and to other law;

F.    That the Court award Plaintiff Shooster the sum of One Hundred Thousand Dollars ($100,000.00);

G.    That the Court award Plaintiff R/S the sum of Fifty Thousand Dollars ($50,000.00); and

H.    That Plaintiffs be awarded such other and further relief as this Honorable Court deems just and proper.

Dated:    2/1/00

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Road #801
Boca Raton, Florida 33486
Tel: (561) 395-5511
Fax: (561) 368-9274

by: _____
KEITH A. GOLDBAUM, ESQUIRE
FBN 0475637

FESTIVAL                ID:9549683980            APR 15'99   16:46 No.003 P

# FORUM ARLINGTON PROPERTIES, LTD.

18150 Wilshire Blvd., Suite 7414, Los Angeles, CA 90036

November 2, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

                              VIA TELECOPIER

     Re:    Festival/Dallas

Dear Dan:

Pursuant to our discussion, this letter shall confirm our agreement relating to the use of your Festival logo and advertising (as set forth in my November 7, 1997 letter to you, modified by letter dated November 28, 1997). We shall extend the rights granted for an additional year. Additionally, we shall have the right to use two new TV spots created for you by Bieber/Silverstein titled "comps", indefinitely. In return we agree to pay you the sum of $50,000 within 6 months of this date. $49,000 shall be allocated to production costs you have paid for the new ads and $1,000 shall be allocated to the continuation of the logo license.

And finally, pursuant to your request, the following are current costs incurred on the Dallas Festival. These costs are approximate and the costs are continuing as we finalize construction and carry negative operating income until stabilization.

| | |
|---|---|
| Current loan x 50% | $1,400,000 |
| Capital to-date x 50% | $1,600,000 |
| New $1m loan x 50% | $  500,000 |
| Partner buy-out x 100% | $1,900,000 |
| | |
| Total cost of 50% | $5,400,000 |

(of this amount, $1,900,000 is currently financed)
(this amount does not include carry on capital)

I look forward to continuing our discussions towards a mutually beneficial venture. Also, please don't forget to discuss the overall participation with Harry. I am eager to know your collective thoughts on that issue.   Best regards to you and the family.

                              Sincerely,

                              Bob Yari

FESTIVAL                    ID:9549683980              APR 15'99   16:45 No.003 P.C

## FORUM ARLINGTON PROPERTIES, LTD. 10900 Wilshire Blvd. Suite 1500 Los Angeles, CA 90024

an option to give up your shares and regain the name rights granted in the event an agreed upon number of projects have not been acquired by a certain date.

FESTIVAL                    ID:9549683980              APR 16 '99    8:37 No.001

## FORUM ARLINGTON PROPERTIES, Ltd. 10250 WILSHIRE BOULEVARD, SUITE 1050, LOS ANGELES, CA 90024

March 5, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

<u>VIA TELECOPIER</u>

Re:     Festiventures/ Festival Marketplace

Dear Dan:

Pursuant to our discussion, this letter shall confirm my agreement relating to your consulting services with respect to the Festival Marketplace Mall and our general understanding regarding our potential joint venture.

Over and above the commitments set forth in the November 7, 1997 letter, Festival Marketplace, Ltd. shall pay you the sum of $100,000 for your consulting services up through opening and stabilization (approximately three months) of the mall. We have agreed that this sum will be payable once the mall is operational and positive cash flows are generating. I truly appreciate your understanding in this respect as this will allow the current availability of funds to be concentrated on the construction, marketing and leasing efforts.

Additionally, as we are contemplating our joint venture and I await draft agreements from your attorney, we shall both move forward with efforts to procure venture capital financing in the interim as long as no liability or cost accrues to you prior to full execution of an agreement. This agreement will contain a provision which provides that you will be entitled to 10% ownership in the venture at no cost, should you not desire to participate financially in the equity requirements. And finally, we both agree to use good faith efforts to gain one another an equity purchase opportunity in each of our respective Festival Malls.

I hope this accurately summarizes our discussions. Please do not hesitate to contact me if anything is contrary to your understanding. I look forward to seeing you and Leslee in Dallas. Best regards.

Sincerely,

Bob Yari

September 27, 1999

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Robert Yari
Forum Arlington Properties, Ltd.
10850 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90024

      Re:    <u>Expiration of Right to Use Trademarks</u>
              Our File: 5477.3100

Dear Mr. Yari:

As you know this firm represents Dan Shooster and his business in trademark matters. I write to remind you that your trademark rights expire shortly. As you agreed in your letter to Dan Shooster dated November 2, 1998, whatever limited right you may have enjoyed to use our client's trademarks (the "Trademarks")—including, without limitation, *Festival Flea Market Mall* and *Festival Marketplace Mall*, expires on November 7, 1999. Likewise, any right to use any advertising or other materials containing the Trademarks expires at such time. Please note that notwithstanding the expiration of your license rights, the indemnities that you extended to our client in your March 19, 1998, letter continue in effect and survive such expiration.

Unless you want to enter a formal license agreement in accordance with the instructions set forth below, on or before November 7, 1999, you are reminded that as of such date, under federal law, you must on such date:

- cease using the Trademarks and any colorable imitations thereof, including all materials containing the Trademarks;

- cancel any assumed-name registrations pertaining to any of the Trademarks (including, without limitation, any such registration pertaining to an assumed name incorporating any of the Trademarks);

- amend your company name if it incorporates any of the Trademarks; and

September 27, 1999
Robert Yarl
Page 2

- take any further actions our client may reasonably require to avoid any actual or potential public confusion concerning the parties' respective businesses.

The foregoing obligations are not exclusive of our client's other rights, all of which it reserves.

As you may know, Mr. Shooster hold federal registrations for his mark under the Federal Lanham Act. The Act requires Mr. Shooster, as a condition of his registrations, both to control the use of his marks, and to prevent the unauthorized use of his marks. Consequently, we have warned Mr. Shooster that he must take steps to prevent the continued use by you of the marks after any license rights you have expire on November 7, 1999, to satisfy his federal legal obligations.

If you desire to enter a license agreement to use the Trademarks, you may do so by satisfying all of the following conditions by no later than November 7, 1999:

- notify our firm in writing of your intention to renew;

- pay R/S Associates and Daniel Shooster all amounts you currently owe them respectively, including, without limitation, $51,000 (which includes the $1,000 initial fee never paid) to R/S Associates and $100,000 to Mr. Shooster (please note that there are amounts in addition to this sum that you owe Mr. Shooster); and

- enter our client's form of trademark license agreement.

In any event, the amounts you owe R/S Associates and Daniel Shooster are over due and must still be paid. Mr. Shooster may consider granting you the right to pay the amounts owed to R/S Associates in monthly payments of $5,000, starting October 1, until paid in full, if you otherwise pay the personal amounts owed to him now. He makes this gesture in light of your prior offer of July to make payments on a monthly basis. Under that offer, your proposed monthly payments would have unduly delayed the payment to him that he has told you he wants personally to apply to some matters he has pending. Those payments from you are long overdue. You should be aware that Mr. Shooster has avoided numerous collection attempts as a courtesy to you and to avoid overburdening you. Mr. Shooster seeks the payment to him personally as a gesture of your own good faith and commitment. At this point that your license is expiring, it is imperative to finalize these matters.

To pursue a formal licensing program or otherwise discuss your trademark commitments, please contact me directly. I will be happy to discuss any questions or comments you may have. If you prefer to communicate by e-mail, my address is RRosenwasser@Lawmind.com. To avoid any delay in understanding your intentions, I would appreciate you contacting me at your earliest convenience, and in no event later than September 30, 1999.

September 27, 1999
· Robert Yari
Page 3

Sincerely,

Ronald N. Rosenwasser

cc.:    Daniel Shooster

TRADEMARK STATUS REPORT-R/S ASSOCIATES
AS OF DECEMBER 15, 1999

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace Mall #3101 | 35: Preparing and placing advertisements for others; dissemination of advertising matter on behalf of vendors | 75/439,184 | | Federal |
| | 36: Leasing of market space in a multi-tenanted marketplace | | | |
| Festival Marketplace Mall/Logo #3102 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed materials regarding a multi-tenanted marketplace | T9900000451 | April 16, 1999 | Florida |
| | 36: Leasing of market space in a multi-tenanted marketplace | | | |
| Winners! Arcade/Design #3103 | 41: Video game arcade services and providing party planning services and facilities | 2,285,10' | Oct. 12, 1999 Oct. 12, 2005 Oct. 12, 2009 | Federal |
| Winners! Arcade/Design #3121 | 42: Video arcade, games and party services | T9800000910 | Aug. 4, 1998- Aug. 4, 2008 | Florida |

5477VMsc-TrademarkChrt2.doc
\12.28.99 14:58.37121:599 10:000032699 09.00

EXHIBIT

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace #3104 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace | 2,229,205 | Mar. 2, 1999- Mar. 2, 2005- Mar. 2, 2009 | Federal |
| Festival Marketplace #3105 | 36: Leasing of Flea Market space 35: : Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace 36: Leasing of market space in multi-tenanted marketplace | T960000001373 | Dec. 10, 1996- Dec. 10, 2006 | Florida |
| Shopaholic #3112 | 42: Offering membership in an association to person who purchase a certain dollar volume of merchandise from a multi-tenanted marketplace; Members will be provided special shopping courtesies, discounts, special sales events and a newsletter | T960000001374 | Dec. 10, 1996- Dec. 10, 2006 | Florida |
| Festiventures #3120 | 35: Business consultation services geared toward persons who want to create specialized retail market-places; preparing advertising for persons who operate specialized retail marketplaces | 2,097,593 | Sept. 16, 1997- Sept. 16, 2003- Sept. 16, 2007 | Federal |

| Trademark: | Class; Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festiventures 3112 | 35: Consulting services to persons who want to create specialized retail marketplaces; preparing advertising for persons who operate specialized retail marketplaces | T9600000101093 | Aug. 16, 1997- Sept. 24, 1996- Sept. 24, 2006 | Florida |
| Festivalue #3111 | 35: Promoting and advertising the goods being sold by vendors in a multi-tenanted marketplace by providing discount vouchers; advertising services, namely, providing advertising space in a periodical of the goods and services being provided by retail vendors | 2, 097,592 | Aug. 16, 1997- Aug. 16, 2003- Aug. 16, 2007 | Federal |
| Festivalue #3119 | 35: Preparing advertising for vendors in a multi-tenanted marketplace and preparing advertising for owner of said marketplace | T9600001089 | Sept. 18, 1996- Sept. 18, 2006 | Florida |
| FLEABYTES #3110 | 35: Promoting the goods and services of others by providing advertising and information through a listing or sublisting on a national computer network | 2,044,577 | Mar. 11, 1997- Mar. 11, 2003- Mar. 11, 2007 | Federal |
| FLEA BYTES #3118 | 42: Operating an information link on the Internet | T9600001091 | Sept. 18, 1996 Sept. 18, 2006 | Florida |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea Market Mall #3317 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | T960000001092 | Sept. 18, 1996<br><br>Sept. 18, 2006 | Florida |
| Festival Flea Market Mall #3108 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace<br><br>36: Leasing of Flea Market Space | 1,958,606 | Feb. 27, 1996-<br><br>Feb. 27, 2002-<br><br>Feb. 27, 2006 | Federal |
| Festival Flea Market/Design #3107 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | 1,948,221 | Jan. 16, 1996-<br><br>Jan. 16, 2002-<br><br>Jan. 16, 2006 | Federal |
| Festival Flea Market/Design #3115 | 36: | T15036 | Sept. 23, 1991<br><br>Sept. 23, 2001 | Florida |
| Flea T.V. #3106 | 35: Promoting the goods and services of others by providing advertising on a television shopping show | 2,018,022 | Nov. 19, 1996-<br><br>Nov. 19, 2002-<br><br>Nov. 19, 2006 | Federal |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea T.V. #3114 | 35: Preparing television advertising for vendors in a multi-tenanted marketplace and preparing advertising for the owner of the marketplace | T96000001090 | Sept. 18, 1996 Sept. 18, 2006 | Florida |
| Festival Marketplace /Design #3123 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace 36: Leasing of market space in multi-tenanted marketplace | 75/669,681 | | Federal |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| International Festival Center | Third party application | 75/377,290 | ITU Application | Federal |



**FESTIVAL® MARKETPLACE MALL**

IT'S A BIG WORLD IN HERE.

360 AT PIONEER PARKWAY–ARLINGTON
HEART OF THE METROPLEX
OPEN WED. - FRI. 10:00 AM - 7:00 PM
SAT. 10:00 AM - 8:00 PM
SUN. 12:00 NOON - 6:00 PM
(817) 649-8065

■ FREE PARKING ■ FREE ADMISSION
■ WHEELCHAIRS ■ STROLLERS ■ DIAPER DECKS
■ GIFT CERTIFICATES

ARLINGTON

FESTIVAL

TO FT WORTH — TO DALLAS

Festival Marketplace Mall. And discover world. With over 500 merchants selling merchandise at below outlet prices. It's n-hunter's paradise. There are also a few eats – like our full-service beauty salon. , 6-screen movie theater and our Food Court. It's worlds apart from any- een before and it's all just minutes away. the ordinary and into the unique shop- ce of the Festival Marketplace Mall.

tival Marketplace Mall y descubra todo vo. En este paraíso de los amantes de de 500 comerciantes venden artículos cios más bajos que los del mercado. Y ciones que no esperaba - por ejemplo, laza que ofrece todo tipo de servicios, leo, una sala cinematográfica de 6 Galería Internacional de Restaurantes. nte diferente a lo que haya visto antes. a a pocos minutos de distancia. Así salir de la rutina y disfrute recorriendo del Festival Marketplace Mall.

Festival Marketplace Mall et vous monde entièrement nouveau. Avec chands vendant des marchandises à des prix inférieurs au prix de détail. C'est radis pour les amateurs de bonnes es surprises également, comme notre t, notre galerie de jeux vidéo, notre lles et notre Galerie de Restauration n monde de différence par rapport à avez vu auparavant et à quelques mani. Sortez de l'ordinaire pour l'unique au Festival Marketplace Mall.

dle Festival Marketplace Mall, und uine völlig neue Welt - ein wahres n. In dem mehr als 500 Händler u Preisen verkaufen, die noch ßhandelspreis liegen. Eine wahre ißlerdem erwarten Sie hier auch chende Extras, wie etwa unser mit vollem Serviceangebot, eine n Kino mit 6 Leinwänden und unser mühlbereich. Sie fühlen sich in eine Welt versetzt … an etwas holvon





**HOMEMAKERS** Crystal, linens, dishes, appliances, fine art, furniture, fresh flowers. **BREATH-T...**

**SHOPAHOLICS** Purses, ... ATM bank machine, over 500 merchants, backpacks, collectibles, electronics,

Designer fragrances, cosmetics, lingerie, hosiery, the latest designer fashions,

radio headsets, ...

chocolates, camera...

**WORKAHOLICS** Beepers, phones, suits, ties, belts, shoes, briefcases, and luggage. **HOMEBODIES** Computer softw...

VCRs, videos, recliners, TVs, books, magazines, tools and hardware,

men's fashions, hats, boots, cigars, tuxedos, loungewear, leather jackets,

and wallets. **BARGAIN HU...**

**HIGHROLLERS** Gold jewel...

Costume jewelry, hand-bags, t-shirts, sundries, unusual gift items, candles, baskets, silk flower arrangements and much, much more. **THINGS Fo...**

**AND LITTLE KIDS** Rollerblades, golf clubs, sportswear, exercise equipment.

tennis racquets, name-brand athletic sho...

stuffed animals, candy, toys galore.

hand-held video games ...... **PLUS AN INTERNATIONAL FO...**

**FULL-SERVICE BEAUTY SALON, A 6-SCREEN MOVIE THEATER, FARMER'S...**



# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTDLs |

 

(1 of 2)

Check Status



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* MALL |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-603926 |
| **Registration Number** | 1958606 |
| **Filing Date** | 11/28/1994 |
| **Registration Date** | 02/27/1996 |
| **Design Search Code** | 02.01.33; 02.09.05; 19.07.11; 26.11.07; 26.11.12; 26.11.13 |
| **Description of Mark** | The mark consists of an abstract person outlined in white, running with a shopping bag in each hand against a colored background. The words "*FESTIVAL FLEA MARKET* MALL" appear in a mixture of styled block print and regular print underneath.; The mark is lined for the colors red and blue. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET* MALL" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 12/05/1995 |
| **Type of Mark** | SERVICE MARK |

Page 2 of 2

| International Class | 035 |
|---|---|
| Goods and Services | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

| International Class | 036 |
|---|---|
| Goods and Services | leasing of *flea market* space; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

 

(1 of 2)



# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTOLs |

 

**(2 of 2)**

**Check Status**



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-548598 |
| **Registration Number** | 1948221 |
| **Filing Date** | 07/05/1994 |
| **Registration Date** | 01/16/1996 |
| **Design Search Code** | 29.01.07 |
| **Description of Mark** | The mark consists of the term "*FESTIVAL*", colored in a multi-colored mosaic-like pattern and the words "*FLEA MARKET*" separated by a small comet-like design.; The drawing is lined for the colors green, yellow, red, blue and orange and color is claimed as a feature of the mark. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET*" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 10/24/1995 |
| **Type of Mark** | SERVICE MARK |
| **International Class** | 035 |

Page 2

| | |
|---|---|
| **Goods and Services** | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |
| **International Class** | 036 |
| **Goods and Services** | leasing of *flea market* space; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |

 

(2 of 2)

)                                    )

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 00-6023 CIV HURLEY**

**R/S ASSOCIATES, a Florida**
**Limited Partnership and**
**DAN SHOOSTER**

        **Plaintiff**

**vs.**

**ROBERT YARI and FORUM**
**ARLINGTON PROPERTIES, LTD. AND**
**ALLIANCE COMMERCIAL MANAGEMENT,**

        **Defendants**

_____/

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**</u>
<u>**VERIFIED EMERGENCY MOTION FOR TEMPORARY INJUNCTIVE RELIEF**</u>

Plaintiffs, R/S Associates, a Florida Limited Partnership (hereinafter "R/S") and Dan Shooster (hereinafter "Shooster"), hereby file their Memorandum of Law in Support of Plaintiffs' Verified Emergency Motion For Temporary injunctive Relief, and states as follows:

## I. INTRODUCTION

    1.    Plaintiffs instituted the instant action against Defendants, Robert Yari and Forum Arlington Properties, Ltd. (hereinafter "Defendants"), for injunctive, declaratory and compensatory relief. Plaintiffs' claims arise out of, among other things, Defendants' continued use of Plaintiffs' registered marks, despite Plaintiffs' termination of Defendants' right to do same. In its Complaint, Plaintiffs assert causes of action for, including, but not limited to, Trademark Infringement and Unfair Competition under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

## II.    **BACKGROUND**

2.    Shooster is a executive in R/S.

3.    R/S operates the "Festival Flea Market" which is located at 2900 West Sample Road, Pompano Beach, Florida.

4.    The Festival Flea Market, when originally created, was a unique blend between a flea market and a traditional mall or shopping center which previously did not exist elsewhere in the business world.

5.    The Plaintiffs and Defendants had a series of meetings in 1997 and 1998 wherein the Defendants proposed that the unique Festival Flea Market concept that the Plaintiffs had created be expanded to locations outside of Pompano Beach, Florida.

6.    Specifically, the Defendants proposed that the Festival Flea Market concept be applied to a shopping center which the Defendants operated in the Arlington, Texas area.

7.    To accomplish this end, Plaintiffs and Defendants engaged in numerous discussions wherein the parties would attempt to enter into some sort of a joint venture relationship for the benefit of the Plaintiffs and the Defendants.

8.    Ultimately, it was decided that the Plaintiffs would provide various expertise to the Defendants on how to create a Festival Flea Market concept like the one in Pompano Beach, Florida in exchange for certain compensation.

9.    Attached hereto as Exhibit "A" is a letter dated November 2, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of Fifty Thousand Dollars ($50,000.00) within six (6) months of said letter in exchange for organizing various marketing efforts. Said monies have not been paid as of this date.

10.    Attached hereto as Exhibit "B" is a letter dated March 5, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of One Hundred Thousand Dollars ($100,000.00) for consulting services regarding a mall in the Arlington, Texas area, once the mall is operational and positive cash flows are generating.  Defendant Forum has not paid said One Hundred Thousand Dollars ($100,000.00) to Shooster as of this date.

11.    Plaintiff Shooster has provided all goods and services required of the Exhibit "A" November 2, 1998 letter and Exhibit "B" March 5, 1998 letter.

12.    The Arlington Mall/property is operational and positive cash flow is either being generated or should be generated by this time.

13.    Plaintiffs and Defendants continued to negotiate to try to enter into some sort of a joint venture agreement for the mall/property being operated by Defendants in the Arlington, Texas area; but no joint venture or other agreement was ever reached between Plaintiffs and Defendants, which would give Defendants the right to use Plaintiffs' trademarks or tradenames at this time.

14.    On or about September 27, 1999, counsel for Plaintiffs sent a notice to Defendants, a copy of which is attached herein as Exhibit "C" wherein Plaintiffs demanded that Defendants pay Plaintiff Shooster the sum of One Hundred Thousand Dollars ($100,000.00); Plaintiff R/S the sum of Fifty Thousand Dollars ($50,000.00) and cease and desist from using the tradenames and trademarks of "Festival Flea Market Mall" and "Festival Marketplace Mall" on or before November 7, 1999 unless the parties are able to enter into some sort of License Agreement or other arrangement to allow continued use of said trademarks and tradenames.

15.    Plaintiffs and Defendants have not been able to enter into any agreement whereby Defendants would have the continued right to use any of Plaintiffs' trademarks or tradenames after

61Shooster\Memo.tir\6-1-2000\kag5ds3    3

November 7, 1999.

16.    Defendants have never paid Plaintiff Shooster the One Hundred Thousand Dollars ($100,000.00) due him or Plaintiff R/S the Fifty Thousand Dollars ($50,000.00) due them.

17.    Defendants continue to use the trademarks, tradenames, trade dress and confusingly similar tradenames and trademarks to that of Plaintiffs.

18.    Defendants have no authority to use the trademarks, tradenames, trade dress or other items of the Plaintiffs at this time.

19.    Defendant Alliance is the owner and/or manager of the Arlington Mall that is the subject matter of the aforedescribed dispute.

20.    Plaintiffs currently own numerous Federal and Florida trademarks as more clearly set out in Composite Exhibit "D", a copy of which is attached hereto.

21.    Because Defendants do not have a Trademark License Agreement or any other agreement with the Plaintiffs, Defendants are barred from using any of Plaintiffs trademarks, tradenames, trade dress or anything confusingly similar therewith.

22.    At this time, Defendants are using the tradenames, trademarks and/or trade dress or tradenames or trademarks confusingly similar thereto for their mall located in the Arlington, Texas area.

23.    By reason of the foregoing, Defendants have infringed and threatened to continue the infringement of Plaintiffs registered trademarks in violation of 15 U.S.C. § 1114 and Defendants' actions also constitute unfair competition under 15 U.S.C. § 1125 (a).

24.    Defendants' conduct has subjected and will continue to subject Plaintiffs' rights and its marks to irreparable injury, for which Plaintiffs have no adequate remedy at law.

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA - SUITE 801, 5355 TOWN...

)                                    )

25.    Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to injunctive relief, an accounting of Defendants' profits, treble damages, royalties, and to recover their reasonable attorneys' fees incurred in this action.

## III. ARGUMENT

26.    Pursuant to Federal Rules of Civil Procedure 65, a district Court is reposed with discretionary power to grant preliminary injunctive relief. Burger King Corporation v. Lee, 766 F.Supp. 1149 (S.D.Fla. 1991) United States v. Lambert , 695 F.2d 536, 539 (11th Cir. 1983); Deerfield Medical Center v. Deerfield Beach, 661 F.2d 328, 332 (5th Cir. 1981) . It is undisputed under Federal law in this circuit, that in trademark infringement actions, as in other cases, Plaintiffs must prove four (4) elements to obtain a preliminary injunction. Plaintiffs must show; (1) a substantial likelihood that the movant will prevail on the underlying merits of the case; (2) a substantial threat that the moving party will suffer irreparable damage if relief is denied; (3) a finding that the threatened injury to the movant outweighs the harm the injunction may cause defendant; and (4) a finding that the entry of a preliminary injunction would not disserve the public interest. Burger King Corporation v. Lee, supra, Burger King Corporation v. Hall, 770 F.Supp. 633 (S.D.Fla. 1991); Tally-Ho. Inc. v. Coast Community College District, 889 F. 2d 1018, 1022 (11th Cir. 1989). As more fully set forth below, Plaintiffs have met their burden of persuasion on all four (4) preliminary injunctive standards.

### A. Substantial Likelihood of Success

27.    Under either 15 U.S.C § 1114 or 15 U.S.C. § 1125 (a), the Lanham Act "creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product." Home Box

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801· 5355 TOWN CENTER

)                                    )

<u>Office v. Showtime/The Movie channel, Inc.</u>, 832 F.2d. 1311, 1314 (2d Cir. 1987). "[T]he critical question ... is whether there is a likelihood of confusion, mistake or deception between the registered mark and the allegedly infringing mark." <u>John H. Harland Co. v. Clarke Checks.Inc.</u>, 711 F.2d 966, 972 (llth Cir. 1983); <u>Sun Fun Products, Inc. v. Suntan Research & Development, Inc.</u>, 656 F.2d 186, 189 (5th Cir.1981).

28.    In accordance with the foregoing, in this Circuit, it is well established that falsely suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or sponsorship constitutes infringement. <u>Burger King Corporation v. Mason</u>, 710 F.2d 1480, 1492 (llth Cir. 1983), cert. denied, 465 U.S. 1102, 104 S. Ct. 1599, 80 L. Ed. 2d 130 (1984)). Furthermore, both <u>Burger King Corporation v. Mason</u>, and <u>Burger King Corporation v. Hall</u> reflect the well-settled doctrine that a party who continues to use another party's trademark once same has been contractually terminated, by its very nature, constitutes trademark infringement. <u>See also</u> <u>Ramada Inns, Inc. v. Gadsden Motel Company</u>, 804 F.2d 1562, 1566 (llth Cir. 1986), reh. denied 811 F.2d 612 (llth Cir. 1987), <u>Professional Golfers Association of America v. Bankers Life & Casualty Company</u>, 514 F.2d 665, 670 (5th Cir. 1975).

29.    In the instant case, the aforementioned actions by Defendants, including, but not limited to, utilizing Plaintiffs' trademarks, tradenames and trade dress or in any way holding out to the public that Defendants are affiliated with Plaintiffs, by its very nature, constitutes trademark infringement. Indeed, Defendants' suggestion of an affiliation with Plaintiffs is likely to cause confusion as to a source of sponsorship of Defendants by Plaintiffs, which is false in fact, and will undoubtedly cause a likelihood of confusion, mistake and/or deception with the general public and Plaintiffs' customers and business contacts. To that end, the longer Defendants are permitted to use

61Shooster\Memo.tir 6-1-2000\kag 5ds3                    6

)                                        )

Plaintiffs' marks, the greater the increase in the probability of consumer confusion.  In accordance

with the foregoing, Plaintiffs have demonstrated a substantial likelihood of success on the merits.

### B. Irreparable Harm

Given the strong likelihood of consumer confusion and its likelihood of success on the merits,

Plaintiffs have met their burden of demonstrating a substantial threat of irreparable injury and

entitlement to an injunction pendente lite. Burger King Corporation v. Hall; E. Remy Martin and Co.

756 F.2d 1525, 1529-1530 n. 14.  Indeed, the existence of a likelihood of confusion constitutes

irreparable injury as a matter of law sufficient to satisfy the requirements of Federal Rule of Civil

Procedure 65. Sundor Brands, Inc. v. Borden, Inc. 663 F.Supp. 86, 93 (M.D. Fla, 1986), citing E.

Remy Martin and Co., 756 F.2d 1525, 1530 n.14. Moreover, where there is a likelihood of confusion,

remedies under the Lanham Act, including injunctive relief, are appropriate, Congra, Inc. v. Singleton,

743 F.2d 1508, 1512 (llth Cir. 1984).

30.    Inasmuch as Plaintiffs are likely to prevail on the merits of their trademark

infringement claim by establishing a likelihood of confusion, it follows that Plaintiffs have established

that the injury it faces is of an irreparable nature.  This is true even though a Plaintiff is not required

---

'In Burger King v. Hall, the court analyzed seven factors in
determining whether there was confusion created by the
Defendant's continued use of Burger King's marks.  Specifically,
the Court noted "In determining whether Hall's use of BKC Marks
is likely to cause confusion, the following factors must be
considered: (1) the type of plaintiff's trademark; (2) the
similarity of design between plaintiff's marks and those used by
defendant (3) the similarity of the products; (4) the identity of
retail outlets and purchasers; (5) the similarity of advertising
media used; (6) defendant's alleged intent; and (7) proof of
actual confusion." in the instant case, an analysis of the
foregoing factors leads to the conclusion that confusion is
created by Defendants' continued use of Plaintiffs' marks.

to separately show irreparable injury in order to obtain a preliminary injunction if a prima facie case

of an infringement is made. <u>Universal City Studios, Inc. v. Casey & Casey, Inc.</u> 622 F.Supp. 201

(S.D. Fla. 1985).

31.     In accordance with the foregoing, if a preliminary injunction is not granted in the

instant case, the good will and reputation of Plaintiffs will continue to be harmed until the instant

case is concluded. Additionally, Plaintiffs would also be deprived of their ability to exercise control

over the nature and quality of their trademarks, tradenames and trade dress, and would have no

effective way to monitor or control the quality of the shopping center being operated by Defendants.

In fact, if Defendants are not enjoined, they would have effectively created a trademark License

Agreement though involuntary servitude. To that end, Defendants' conduct has subjected and will

continue to subject Plaintiffs' rights, marks and reputation to irreparable injury, for which Plaintiff s

have no adequate remedy at law, and for which money damages will not adequately compensate

Plaintiffs.

C.     <u>The Threatened Injury to Plaintiffs Outweigh Any Threatened harm to Defendants</u>

32.     The threatened injury to Plaintiffs outweigh any harm Defendants may suffer from the

granting of injunctive relief. Indeed, as stated in <u>American Home Products Corporation vs. Johnson</u>

<u>Chemical Company</u>, 589 F.2d 103, 107 (2d Cir.1978), "[o]ne who adopts the mark of another for

similar goods acts at his own peril," since he has no claim to the profits or advantages thereby

derived.

33.     In the instant case, any harm suffered by Defendants will have been brought about by

their own actions in failing to comply with their Agreements with Plaintiffs. Furthermore, if a

preliminary injunction is not granted, Plaintiffs will be put in a position where a terminated License

Agreement will remain in operation unsupervised and unregulated by Plaintiffs until the instant case has been concluded. Accordingly, any threatened harm to Defendants is outweighed by the threatened injury to Plaintiffs.

    D.    The Public Interest Will be Furthered by the Issuance of The Requested Relief.

    34.    Finally, it is not in the public interest to condone Defendants' material breach of the License Agreement or allow Defendants to continue to operate their shopping center with the unauthorized use of Plaintiffs' marks for an extended period of time. Indeed, granting injunctive relief will serve the public interest by preventing consumer confusion. As stated in Church of Scientology Int'l v. Elmira Mission of Church of Scientology, 794 F.2d 38, 44 (2d Cir. 1986):

> . . . the public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increased the probability of consumer confusion.

See also Sundor Brands, Inc. v. Borden, Inc., 663 F.Supp. 86 (M.D. Fla. 1986):

> In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed, when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation.

Id. at 93.

    35. In the instant case, the public interest can only be served by the immediate interdiction of Defendants' use of Plaintiffs' marks. For example, Plaintiffs are concerned, among other things, that Defendants are signing up Tenants under Plaintiffs' name, taking money from said Tenants, and that said Tenants will never receive the benefits they bargained for from Plaintiffs due to the fact that Plaintiffs have not granted Defendants' Trademark License.

    36.    In accordance with the foregoing, and in order to properly protect Plaintiffs' rights,

FESTIVAL

ID:9549683980                    APR 15'99   16:45 No.003 P.C

# FORUM ARLINGTON PROPERTIES, LTD.

November 2, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

**VIA TELECOPIER**

Re:    Festival/Dallas

Dear Dan:

Pursuant to our discussion, this letter shall confirm our agreement relating to the use of your Festival logo and advertising (as set forth in my November 7, 1997 letter to you, modified by letter dated November 23, 1997). We shall extend the rights granted for an additional year. Additionally, we shall have the right to use two new TV spots created for you by Beber/Silverstein titled "comps", indefinitely. In return we agree to pay you the sum of $50,000 within 6 months of this date. $49,000 shall be allocated to production costs you have paid for the new ads and $1,000 shall be allocated to the continuation of the logo license.

And finally, pursuant to your request, the following are current costs incurred on the Dallas Festival. These costs are approximate and the costs are continuing as we finalize construction and carry negative operating income until stabilization.

| | |
|---|---|
| Current loan x 50% | $1,400,000 |
| Capital to-date x 50% | $1,600,000 |
| New $1m loan x 50% | $ 500,000 |
| Partner buy-out x 100% | $1,900,000 |
| | |
| Total cost of 50% | $5,400,000 |

(of this amount, $1,900,000 is currently financed)
(this amount does not include carry on capital)

I look forward to continuing our discussions towards a mutually beneficial venture. Also, please don't forget to discuss the overall participation with Harry. I am eager to know your collective thoughts on that issue. Best regards to you and the family.

Sincerely,

Bob Yari

ID:9549683980                          APR 16 '99    8:37 No.001

**FESTIVAL**

## FORUM ARLINGTON PROPERTIES, Ltd.  10430 WILSHIRE BOULEVARD, SUITE 1050, LOS ANGELES, CA 90024

March 5, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

<u>VIA TELECOPIER</u>

Re:    Festiventures/ Festival Marketplace

Dear Dan:

Pursuant to our discussion, this letter shall confirm my agreement relating to your <u>consulting services with respect to the Festival Marketplace Mall</u> and our general understanding regarding our potential joint venture.

Over and above the commitments set forth in the November 7, 1997 letter, Festival Marketplace, Ltd. Shall pay you the sum of $100,000 for your consulting services up through opening and stabilization (approximately three months) of the mall. We have agreed that this sum will be payable once the mall is operational and positive cash flows are generating. I truly appreciate your understanding in this respect as this will allow the current availability of funds to be concentrated on the construction, marketing and leasing efforts.

Additionally, as we are contemplating our joint venture and I await draft agreements from your attorney, we shall both move forward with efforts to procure venture capital financing in the interim as long as no liability or cost accrues to you prior to full execution of an agreement. This agreement will contain a provision which provides that you will be entitled to 10% ownership in the venture at no cost, should you not desire to participate financially in the equity requirements. And finally, we both agree to use good faith efforts to gain one another an equity purchase opportunity in each of our respective Festival Malls.

I hope this accurately summarizes our discussions. Please do not hesitate to contact me if anything is contrary to your understanding. I look forward to seeing you and Leslee in Dallas. Best regards.

Sincerely,

Bob Yari

September 27, 1999

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Robert Yari
Forum Arlington Properties, Ltd.
10850 Wilshire Boulevard, Suite 1050
Los Angeles, CA 90024

Re:    <u>Expiration of Right to Use Trademarks</u>
         Our File: 5477.3100

Dear Mr. Yari:

As you know this firm represents Dan Shooster and his business in trademark matters. I write to remind you that your trademark rights expire shortly. As you agreed in your letter to Dan Shooster dated November 2, 1998, whatever limited right you may have enjoyed to use our client's trademarks (the "Trademarks")—including, without limitation, *Festival Flea Market Mall* and *Festival Marketplace Mall*, expires on November 7, 1999. Likewise, any right to use any advertising or other materials containing the Trademarks expires at such time. Please note that notwithstanding the expiration of your license rights, the indemnities that you extended to our client in your March 19, 1998, letter continue in effect and survive such expiration.

Unless you want to enter a formal license agreement in accordance with the instructions set forth below, on or before November 7, 1999, you are reminded that as of such date, under federal law, you must on such date:

- cease using the Trademarks and any colorable imitations thereof, including all materials containing the Trademarks;

- cancel any assumed-name registrations pertaining to any of the Trademarks (including, without limitation, any such registration pertaining to an assumed name incorporating any of the Trademarks);

- amend your company name if it incorporates any of the Trademarks; and

September 27, 1999
Robert Yari
Page 2

- take any further actions our client may reasonably require to avoid any actual or potential public confusion concerning the parties' respective businesses.

The foregoing obligations are not exclusive of our client's other rights, all of which it reserves.

As you may know, Mr. Shooster hold federal registrations for his mark under the Federal Lanham Act. The Act requires Mr. Shooster, as a condition of his registrations, both to control the use of his marks, and to prevent the unauthorized use of his marks. Consequently, we have warned Mr. Shooster that he must take steps to prevent the continued use by you of the marks after any license rights you have expire on November 7, 1999, to satisfy his federal legal obligations.

If you desire to enter a license agreement to use the Trademarks, you may do so by satisfying all of the following conditions by no later than November 7, 1999:

- notify our firm in writing of your intention to renew;

- pay R/S Associates and Daniel Shooster all amounts you currently owe them respectively, including, without limitation, $51,000 (which includes the $1,000 initial fee never paid) to R/S Associates and $100,000 to Mr. Shooster (please note that there are amounts in addition to this sum that you owe Mr. Shooster); and

- enter our client's form of trademark license agreement.

In any event, the amounts you owe R/S Associates and Daniel Shooster are over due and must still be paid. Mr. Shooster may consider granting you the right to pay the amounts owed to R/S Associates in monthly payments of $5,000, starting October 1, until paid in full, if you otherwise pay the personal amounts owed to him now. He makes this gesture in light of your prior offer of July to make payments on a monthly basis. Under that offer, your proposed monthly payments would have unduly delayed the payment to him that he has told you he wants personally to apply to some matters he has pending. Those payments from you are long overdue. You should be aware that Mr. Shooster has avoided numerous collection attempts as a courtesy to you and to avoid overburdening you. Mr. Shooster seeks the payment to him personally as a gesture of your own good faith and commitment. At this point that your license is expiring, it is imperative to finalize these matters.

To pursue a formal licensing program or otherwise discuss your trademark commitments, please contact me directly. I will be happy to discuss any questions or comments you may have. If you prefer to communicate by e-mail, my address is RRosenwasser@Lawmind.com. To avoid any delay in understanding your intentions, I would appreciate you contacting me at your earliest convenience, and in no event later than September 30, 1999.

September 27, 1999
· Robert Yari
Page 3

Sincerely,

Ronald N. Rosenwasser

cc.:    Daniel Shooster

**TRADEMARK STATUS REPORT-R/S ASSOCIATES**
**AS OF DECEMBER 15, 1999**

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace Mall #3101 | 35: Preparing and placing advertisements for others; dissemination of advertising matter on behalf of vendors | 75/439,184 | | Federal |
| | 36: Leasing of market space in a multi-tenanted marketplace | | | |
| Festival Marketplace Mall/Logo #3102 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed materials regarding a multi-tenanted marketplace | T99000000451 | April 16, 1999 | Florida |
| | 36: Leasing of market space in a multi-tenanted marketplace | | | |
| Winners! Arcade/Design #3103 | 41: Video game arcade services and providing party planning services and facilities | 2,285,10' | Oct. 12, 1999 Oct. 12, 2005 Oct. 12, 2009 | Federal |
| Winners! Arcade/Design #3121 | 42: Video arcade, games and party services | T98000000910 | Aug. 4, 1998- Aug. 4, 2008 | Florida |

5477DMisc-TrademarkChart2.doc
\12.28.99 14:58.371121599 16.00032699 09:00

EXHIBIT D

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace #3104 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace | 2,229,205 | Mar. 2, 1999- Mar. 2, 2005- Mar. 2, 2009 | Federal |
| Festival Marketplace #3105 | 36: Leasing of Flea Market space | T960000001373 | Dec. 10, 1996- Dec. 10, 2006 | Florida |
| | 35: : Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace | | | |
| Shopaholic #3112 | 36: Leasing of market space in multi-tenanted marketplace | T960000001374 | Dec. 10, 1996- Dec. 10, 2006 | Florida |
| | 42: Offering membership in an association to person who purchase a certain dollar volume of merchandise from a multi-tenanted marketplace; Members will be provided special shopping courtesies, discounts, special sales events and a newsletter | | | |
| Festiventures #3120 | 35: Business consultation services geared toward persons who want to create specialized retail market-places; preparing advertising for persons who operate specialized retail marketplaces | 2,097,593 | Sept. 16, 1997- Sept. 16, 2003- Sept. 16, 2007 | Federal |

5477MIsc-Trademark/Chart2.doc
VI.28.99 14:58.37121599 10.00032699 09:00

| Trademark: | Class; Description: | Serial Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festiventures 3112 | 35: Consulting services to persons who want to create specialized retail marketplaces; preparing advertising for persons who operate specialized retail marketplaces | T96000001093 | Sept. 24, 1996- Sept. 24, 2006 | Florida |
| Festivalue #3111 | 35: Promoting and advertising the goods being sold by vendors in a multi-tenanted marketplace by providing discount vouchers; advertising services, namely, providing advertising space in a periodical of the goods and services being provided by retail vendors | 2,097,592 | Aug. 16, 1997- Aug. 16, 2003- Aug. 16, 2007 | Federal |
| Festivalue #3119 | 35: Preparing advertising for vendors in a multi-tenanted marketplace and preparing advertising for owner of said marketplace | T96000001089 | Sept. 18, 1996- Sept. 18, 2006 | Florida |
| FLEABYTES #3110 | 35: Promoting the goods and services of others by providing advertising and information through a listing or sublisting on a national computer network | 2,044,577 | Mar. 11, 1997- Mar. 11, 2003- Mar. 11, 2007 | Federal |
| FLEA BYTES #3118 | 42: Operating an information link on the Internet | T96000001091 | Sept. 18, 1996 Sept. 18, 2006 | Florida |

3

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea Market Mall #3117 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | T96000001092 | Sept. 18, 1996<br>Sept. 18, 2006 | Florida |
| Festival Flea Market Mall #3108 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | 1,958,606 | Feb. 27, 1996-<br>Feb. 27, 2002-<br>Feb. 27, 2006 | Federal |
| Festival Flea Market/Design #3107 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of Flea Market Space | 1,948,221 | Jan. 16, 1996-<br>Jan. 16, 2002-<br>Jan. 16, 2006 | Federal |
| Festival Flea Market/Design #3115 | 36: | T15036 | Sept. 23, 1991<br>Sept. 23, 2001 | Florida |
| Flea T.V. #3106 | 35: Promoting the goods and services of others by providing advertising on a television shopping show | 2,018,022 | Nov. 19, 1996-<br>Nov. 19, 2002-<br>Nov. 19, 2006 | Federal |

5477Msc-TrademarkChart2.doc
\12.28.99 14:58.37\21599 10.00\02699 09:00

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date: Affidavit of Use Filing Date and Renewal Date: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|---|
| Flea T.V. #3114 | 35: Preparing television advertising for vendors in a multi-tenanted marketplace and preparing advertising for the owner of the marketplace | T96000001090 | Sept. 18, 1996 Sept. 18, 2006 | Florida | |
| Festival Marketplace /Design #3123 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace | 75/669,681 | | Federal | |
| | 36: Leasing of market space in multi-tenanted marketplace | | | | |
| International Festival Center | Third party application | 75/377,290 | ITU Application | Federal | |

54779Misc-TrademarkChrt2.doc
\12.28.99 14:58.37121599 10:000026099 09:00



# FESTIVAL MARKETPLACE MALL®

## IT'S A BIG WORLD IN HERE.

ARLINGTON

FESTIVAL

← TO FORT WORTH   TO DALLAS →

360 AT PIONEER PARKWAY - ARLINGTON
HEART OF THE METROPLEX
OPEN WED. - FRI., 10:00 AM - 7:00 PM
SAT., 10:00 AM - 8:00 PM
SUN., 12:00 NOON - 6:00 PM
(817) 649-8065

- FREE PARKING - FREE ADMISSION
- WHEELCHAIRS - STROLLERS - DIAPER DECKS
- GIFT CERTIFICATES



FESTIVAL

Festival Marketplace Mall. And discover world. With over 500 merchants selling merchandise at below outlet prices. It's -hunter's paradise. There are also a few -ats – like our full-service beauty salon. , 6-screen movie theater and our Food Court. It's worlds apart from any- en before and it's all just minutes away. the ordinary and into the unique shop- ce of the Festival Marketplace Mall.

...val Marketplace Mall y descubra todo vo. En este paraíso de los amantes de  de 500 comerciantes venden artículos ...os más bajos que los del mercado. Y ...clones que no esperaba – por ejemplo, ...teza que ofrece todo tipo de servicios. ...eo, una sala cinematográfica de 6 Galería Internacional de Restaurantes. ...nte diferente a lo que haya visto antes. ...a pocos minutos de distancia. Así ...salir de la rutina y disfrute recorriendo del Festival Marketplace Mall.

...estival Marketplace Mall et vous ...monde entièrement nouveau. Avec ...chands vendant des marchandises de ...rix inférieure au prix de détail, c'est ...adis pour les amateurs de bonnes ...s surprises également, comme notre ... notre galerie de jeux vidéo, notre ...tes et notre Galerie de Restauration ...n monde de différence par rapport à ... avez vu auparavant et à quelques ...tent. Sortez de l'ordinaire pour ...nique au Festival Marketplace Mall.

...lle Festival Marketplace Mall, und ...te völlig neue Welt – ein wahres ...n dem mehr als 500 Händler ...Preisen verkaufen, die noch ...handelspreis liegen. Eine wahre ...erdem erwarten Sie hier auch ...ende Extras, wie etwa unser ...mit vollem Serviceangebot, eine ...Kino mit 6 Leinwänden und unser ...blirbereich. Sie fühlen sich in eine ...










**HOMEMAKERS** Crystal, linens, dishes, appliances, fine art, furniture, fresh flowers. **BREATH**

Designer fragrances, cosmetics, lingerie, hosiery, the latest designer fashions, chocolates, camera

ATM bank machine, over 500 merchants, backpacks, collectibles, electronics, radio headsets, t

**SHOPAHOLICS** Purses,

**WORKAHOLICS** Beepers, phones, suits, ties, belts, shoes, briefcases, and luggage. **HOMEBODIES** Computer softw

VCRs, videos, recliners, TVs, books, magazines, tools and hardware,

men's fashions, hats, boots, cigars, tuxedos, loungewear, leather jackets,

Costume jewelry, hand-bags, t-shirts, sundries, unusual gift items, candles, baskets, silk flower arrangements and much, much more. **THINGS FO**

and wallets. **BARGAIN HU**

**HIGHROLLERS** Gold jewe

**AND LITTLE KIDS** Rollerblades, golf clubs, sportswear, exercise equipment. tennis racquets, name-brand athletic sho

stuffed animals, candy, toys galore,

hand-held video games .......**PLUS AN INTERNATIONAL FO**

**FULL-SERVICE BEAUTY SALON, A 6-SCREEN MOVIE THEATER, FARMER'S**

 **US PATENT & TRADEMARK OFFICE**
TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTDLs |
|------|------|-------|---------|--------|--------|-----------|-------|

  

(1 of 2)

Check Status



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* MALL |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-603926 |
| **Registration Number** | 1958606 |
| **Filing Date** | 11/28/1994 |
| **Registration Date** | 02/27/1996 |
| **Design Search Code** | 02.01.33; 02.09.05; 19.07.11; 26.11.07; 26.11.12; 26.11.13 |
| **Description of Mark** | The mark consists of an abstract person outlined in white, running with a shopping bag in each hand against a colored background. The words "*FESTIVAL FLEA MARKET* MALL" appear in a mixture of styled block print and regular print underneath.; The mark is lined for the colors red and blue. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET* MALL" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 12/05/1995 |
| **Type of Mark** | SERVICE MARK |

| **International Class** | 035 |
|---|---|
| **Goods and Services** | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

| **International Class** | 036 |
|---|---|
| **Goods and Services** | leasing of *flea market* space; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

 

(1 of 2)



# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTOLs |

 

**(2 of 2)**

**Check Status**



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-548598 |
| **Registration Number** | 1948221 |
| **Filing Date** | 07/05/1994 |
| **Registration Date** | 01/16/1996 |
| **Design Search Code** | 29.01.07 |
| **Description of Mark** | The mark consists of the term "*FESTIVAL*", colored in a multi-colored mosaic-like pattern and the words "*FLEA MARKET*" separated by a small comet-like design.; The drawing is lined for the colors green, yellow, red, blue and orange and color is claimed as a feature of the mark. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET*" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 10/24/1995 |
| **Type of Mark** | SERVICE MARK |
| **International Class** | 035 |

Page

| | |
|---|---|
| **Goods and Services** | preparing advertising for vendors in a multi-tenanted marketplace; disseminatio. of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |
| **International Class** | 036 |
| **Goods and Services** | leasing of *flea market* space; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |

 

(2 of 2)