# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 00-6023 CIV HURLEY**

R/S ASSOCIATES, a Florida
Limited Partnership and
DAN SHOOSTER

        **Plaintiff**

vs.

ROBERT YARI and FORUM
ARLINGTON PROPERTIES, LTD. AND
ALLIANCE COMMERCIAL MANAGEMENT,

        **Defendants**

_____/

**NIGHT BOX**
**FILED**

JUN 1 3 2000

CLERK, USDC / SDFL / WPB

---

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' VERIFIED EMERGENCY MOTION FOR TEMPORARY INJUNCTIVE RELIEF

Plaintiffs, R/S Associates, a Florida Limited Partnership (hereinafter "R/S") and Dan Shooster (hereinafter "Shooster"), hereby file their Memorandum of Law in Support of Plaintiffs' Verified Emergency Motion For Temporary injunctive Relief, and states as follows:

## I. INTRODUCTION

1.      Plaintiffs instituted the instant action against Defendants, Robert Yari and Forum Arlington Properties, Ltd. (hereinafter "Defendants"), for injunctive, declaratory and compensatory relief. Plaintiffs' claims arise out of, among other things, Defendants' continued use of Plaintiffs' registered marks, despite Plaintiffs' termination of Defendants' right to do same. In its Complaint, Plaintiffs assert causes of action for, including, but not limited to, Trademark Infringement and Unfair Competition under 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

61\Shooster\Memo.tir\6-1-2000\kag5ds3

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

## II.    BACKGROUND

2.    Shooster is a executive in R/S.

3.    R/S operates the "Festival Flea Market" which is located at 2900 West Sample Road, Pompano Beach, Florida.

4.    The Festival Flea Market, when originally created, was a unique blend between a flea market and a traditional mall or shopping center which previously did not exist elsewhere in the business world.

5.    The Plaintiffs and Defendants had a series of meetings in 1997 and 1998 wherein the Defendants proposed that the unique Festival Flea Market concept that the Plaintiffs had created be expanded to locations outside of Pompano Beach, Florida.

6.    Specifically, the Defendants proposed that the Festival Flea Market concept be applied to a shopping center which the Defendants operated in the Arlington, Texas area.

7.    To accomplish this end, Plaintiffs and Defendants engaged in numerous discussions wherein the parties would attempt to enter into some sort of a joint venture relationship for the benefit of the Plaintiffs and the Defendants.

8.    Ultimately, it was decided that the Plaintiffs would provide various expertise to the Defendants on how to create a Festival Flea Market concept like the one in Pompano Beach, Florida in exchange for certain compensation.

9.    Attached hereto as Exhibit "A" is a letter dated November 2, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of Fifty Thousand Dollars ($50,000.00) within six (6) months of said letter in exchange for organizing various marketing efforts. Said monies have not been paid as of this date.

61Shooster\Memo.tir\6-1-2000\kag5ds3                    2

10.    Attached hereto as Exhibit "B" is a letter dated March 5, 1998 from Defendant Forum to Plaintiff Shooster wherein Forum agreed to pay Shooster the sum of One Hundred Thousand Dollars ($100,000.00) for consulting services regarding a mall in the Arlington, Texas area, once the mall is operational and positive cash flows are generating. Defendant Forum has not paid said One Hundred Thousand Dollars ($100,000.00) to Shooster as of this date.

11.    Plaintiff Shooster has provided all goods and services required of the Exhibit "A" November 2, 1998 letter and Exhibit "B" March 5, 1998 letter.

12.    The Arlington Mall/property is operational and positive cash flow is either being generated or should be generated by this time.

13.    Plaintiffs and Defendants continued to negotiate to try to enter into some sort of a joint venture agreement for the mall/property being operated by Defendants in the Arlington, Texas area; but no joint venture or other agreement was ever reached between Plaintiffs and Defendants, which would give Defendants the right to use Plaintiffs' trademarks or tradenames at this time.

14.    On or about September 27, 1999, counsel for Plaintiffs sent a notice to Defendants, a copy of which is attached herein as Exhibit "C" wherein Plaintiffs demanded that Defendants pay Plaintiff Shooster the sum of One Hundred Thousand Dollars ($100,000.00); Plaintiff R/S the sum of Fifty Thousand Dollars ($50,000.00) and cease and desist from using the tradenames and trademarks of "Festival Flea Market Mall" and "Festival Marketplace Mall" on or before November 7, 1999 unless the parties are able to enter into some sort of License Agreement or other arrangement to allow continued use of said trademarks and tradenames.

15.    Plaintiffs and Defendants have not been able to enter into any agreement whereby Defendants would have the continued right to use any of Plaintiffs' trademarks or tradenames after

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

November 7, 1999.

16.    Defendants have never paid Plaintiff Shooster the One Hundred Thousand Dollars ($100,000.00) due him or Plaintiff R/S the Fifty Thousand Dollars ($50,000.00) due them.

17.    Defendants continue to use the trademarks, tradenames, trade dress and confusingly similar tradenames and trademarks to that of Plaintiffs.

18.    Defendants have no authority to use the trademarks, tradenames, trade dress or other items of the Plaintiffs at this time.

19.    Defendant Alliance is the owner and/or manager of the Arlington Mall that is the subject matter of the aforedescribed dispute.

20.    Plaintiffs currently own numerous Federal and Florida trademarks as more clearly set out in Composite Exhibit "D", a copy of which is attached hereto.

21.    Because Defendants do not have a Trademark License Agreement or any other agreement with the Plaintiffs, Defendants are barred from using any of Plaintiffs trademarks, tradenames, trade dress or anything confusingly similar therewith.

22.    At this time, Defendants are using the tradenames, trademarks and/or trade dress or tradenames or trademarks confusingly similar thereto for their mall located in the Arlington, Texas area.

23.    By reason of the foregoing, Defendants have infringed and threatened to continue the infringement of Plaintiffs registered trademarks in violation of 15 U.S.C. § 1114 and Defendants' actions also constitute unfair competition under 15 U.S.C. § 1125 (a).

24.    Defendants' conduct has subjected and will continue to subject Plaintiffs' rights and its marks to irreparable injury, for which Plaintiffs have no adequate remedy at law.

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

25.    Pursuant to 15 U.S.C. §§ 1116 and 1117, Plaintiffs are entitled to injunctive relief, an accounting of Defendants' profits, treble damages, royalties, and to recover their reasonable attorneys' fees incurred in this action.

## III. ARGUMENT

26.    Pursuant to Federal Rules of Civil Procedure 65, a district Court is reposed with discretionary power to grant preliminary injunctive relief. Burger King Corporation v. Lee, 766 F.Supp. 1149 (S.D.Fla. 1991) United States v. Lambert , 695 F.2d 536, 539 (11th Cir. 1983); Deerfield Medical Center v. Deerfield Beach, 661 F.2d 328, 332 (5th Cir. 1981) . It is undisputed under Federal law in this circuit, that in trademark infringement actions, as in other cases, Plaintiffs must prove four (4) elements to obtain a preliminary injunction. Plaintiffs must show; (1) a substantial likelihood that the movant will prevail on the underlying merits of the case; (2) a substantial threat that the moving party will suffer irreparable damage if relief is denied; (3) a finding that the threatened injury to the movant outweighs the harm the injunction may cause defendant; and (4) a finding that the entry of a preliminary injunction would not disserve the public interest. Burger King Corporation v. Lee, supra, Burger King Corporation v. Hall, 770 F.Supp. 633 (S.D.Fla. 1991); Tally-Ho. Inc. v. Coast Community College District, 889 F. 2d 1018, 1022 (11th Cir. 1989). As more fully set forth below, Plaintiffs have met their burden of persuasion on all four (4) preliminary injunctive standards.

### A. Substantial Likelihood of Success

27.    Under either 15 U.S.C § 1114 or 15 U.S.C. § 1125 (a), the Lanham Act "creates a claim for trademark infringement when a trademark holder can demonstrate that the use of its trademark by another is likely to confuse consumers as to the source of the product." Home Box

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

Office v. Showtime/The Movie channel, Inc., 832 F.2d. 1311, 1314 (2d Cir. 1987). "[T]he critical

question ... is whether there is a likelihood of confusion, mistake or deception between the registered

mark and the allegedly infringing mark." John H. Harland Co. v. Clarke Checks Inc., 711 F.2d 966,

972 (llth Cir. 1983); Sun Fun Products, Inc. v. Suntan Research & Development, Inc., 656 F.2d 186,

189 (5th Cir. 1981).

    28.    In accordance with the foregoing, in this Circuit, it is well established that falsely

suggesting affiliation with the trademark owner in a manner likely to cause confusion as to source or

sponsorship constitutes infringement. Burger King Corporation v. Mason, 710 F.2d 1480, 1492 (llth

Cir. 1983), cert. denied, 465 U.S. 1102, 104 S. Ct. 1599, 80 L. Ed. 2d 130 (1984)). Furthermore,

both Burger King Corporation v. Mason, and Burger King Corporation v. Hall reflect the well-

settled doctrine that a party who continues to use another party's trademark once same has been

contractually terminated, by its very nature, constitutes trademark infringement. See also Ramada

Inns, Inc. v. Gadsden Motel Company, 804 F.2d 1562, 1566 (llth Cir. 1986), reh. denied 811 F.2d

612 (llth Cir. 1987); Professional Golfers Association of America v. Bankers Life & Casualty

Company, 514 F.2d 665, 670 (5th Cir. 1975).

    29.    In the instant case, the aforementioned actions by Defendants, including, but not

limited to, utilizing Plaintiffs' trademarks, tradenames and trade dress or in any way holding out to

the public that Defendants are affiliated with Plaintiffs, by its very nature, constitutes trademark

infringement. Indeed, Defendants' suggestion of an affiliation with Plaintiffs is likely to cause

confusion as to a source of sponsorship of Defendants by Plaintiffs, which is false in fact, and will

undoubtedly cause a likelihood of confusion, mistake and/or deception with the general public and

Plaintiffs' customers and business contacts. To that end, the longer Defendants are permitted to use

Plaintiffs' marks, the greater the increase in the probability of consumer confusion.  In accordance

with the foregoing, Plaintiffs have demonstrated a substantial likelihood of success on the merits.

B. Irreparable Harm

Given the strong likelihood of consumer confusion and its likelihood of success on the merits,

Plaintiffs have met their burden of demonstrating a substantial threat of irreparable injury and

entitlement to an injunction pendente lite. Burger King Corporation v. Hall;  E. Remy Martin and Co.

756 F.2d 1525, 1529-1530 n. 14.  Indeed, the existence of a likelihood of confusion constitutes

irreparable injury as a matter of law sufficient to satisfy the requirements of Federal Rule of Civil

Procedure 65. Sundor Brands, Inc. v. Borden, Inc, 663 F.Supp. 86, 93 (M.D. Fla, 1986), citing E.

Remy Martin and Co., 756 F.2d 1525, 1530 n.14. Moreover, where there is a likelihood of confusion,

remedies under the Lanham Act, including injunctive relief, are appropriate, Congra, Inc. v. Singleton,

743 F.2d 1508, 1512 (llth Cir. 1984).

30.    Inasmuch as Plaintiffs are likely to prevail on the merits of their trademark

infringement claim by establishing a likelihood of confusion, it follows that Plaintiffs have established

that the injury it faces is of an irreparable nature.  This is true even though a Plaintiff is not required

---

[1]In Burger King v. Hall, the court analyzed seven factors in determining whether there was confusion created by the Defendant's continued use of Burger King's marks. Specifically, the Court noted "In determining whether Hall's use of BKC Marks is likely to cause confusion, the following factors must be considered: (1) the type of plaintiff's trademark; (2) the similarity of design between plaintiff's marks and those used by defendant (3) the similarity of the products; (4) the identity of retail outlets and purchasers; (5) the similarity of advertising media used; (6) defendant's alleged intent; and (7) proof of actual confusion." in the instant case, an analysis of the foregoing factors leads to the conclusion that confusion is created by Defendants' continued use of Plaintiffs' marks.

to separately show irreparable injury in order to obtain a preliminary injunction if a prima facie case of an infringement is made. <u>Universal City Studios, Inc. v. Casey & Casey, Inc</u>. 622 F.Supp. 201 (S.D. Fla. 1985).

31.    In accordance with the foregoing, if a preliminary injunction is not granted in the instant case, the good will and reputation of Plaintiffs will continue to be harmed until the instant case is concluded. Additionally, Plaintiffs would also be deprived of their ability to exercise control over the nature and quality of their trademarks, tradenames and trade dress, and would have no effective way to monitor or control the quality of the shopping center being operated by Defendants. In fact, if Defendants are not enjoined, they would have effectively created a trademark License Agreement though involuntary servitude. To that end, Defendants' conduct has subjected and will continue to subject Plaintiffs' rights, marks and reputation to irreparable injury, for which Plaintiff s have no adequate remedy at law, and for which money damages will not adequately compensate Plaintiffs.

C.    <u>The Threatened Injury to Plaintiffs Outweigh Any Threatened harm to Defendants</u>

32.    The threatened injury to Plaintiffs outweigh any harm Defendants may suffer from the granting of injunctive relief. Indeed, as stated in <u>American Home Products Corporation vs. Johnson Chemical Company</u>, 589 F.2d 103, 107 (2d Cir.1978), "[o]ne who adopts the mark of another for similar goods acts at his own peril," since he has no claim to the profits or advantages thereby derived.

33.    In the instant case, any harm suffered by Defendants will have been brought about by their own actions in failing to comply with their Agreements with Plaintiffs. Furthermore, if a preliminary injunction is not granted, Plaintiffs will be put in a position where a terminated License

FRIEDMAN, ROSENWASSER & GOLDBAUM, THE PLAZA · SUITE 801, 5355 TOWN CENTER ROAD, BOCA RATON, FLORIDA 33486

Agreement will remain in operation unsupervised and unregulated by Plaintiffs until the instant case has been concluded.    Accordingly, any threatened harm to Defendants is outweighed by the threatened injury to Plaintiffs.

      D.      <u>The Public Interest Will be Furthered by the Issuance of The Requested Relief.</u>

34.      Finally, it is not in the public interest to condone Defendants' material breach of the License  Agreement or allow Defendants to continue to operate their shopping center with the unauthorized use of Plaintiffs' marks for an extended period of time.  Indeed, granting injunctive relief will serve the public interest by preventing consumer confusion.   As stated in <u>Church of Scientology Int'l v. Elmira Mission of  Church of Scientology</u>, 794 F.2d 38, 44 (2d Cir. 1986):

> . . .    the public interest is especially served by issuing a preliminary injunction against a former licensee as the licensee's status increased the probability of consumer confusion.

<u>See also Sundor Brands, Inc. v. Borden, Inc.</u>, 663 F.Supp. 86 (M.D. Fla. 1986):

> In a trademark or service mark infringement case, a third party, the consuming public, is present and its interests are paramount. Indeed , when a trademark is said to have been infringed, what is actually infringed is the right of the public to be free of confusion and the synonymous right of the trademark owner to control his product's reputation.

<u>Id</u>. at 93.

35.  In the instant case, the public interest can only be served by the immediate interdiction of Defendants' use of Plaintiffs' marks.  For example, Plaintiffs are concerned, among other things, that Defendants are signing up Tenants under Plaintiffs' name, taking money from said Tenants, and that said Tenants will never receive the benefits they bargained for from Plaintiffs due  to the fact that Plaintiffs have not granted Defendants' Trademark License.

36.      In accordance with the foregoing, and in order to properly protect Plaintiffs' rights,

marks and reputation, Defendants should be enjoined from holding out to the public that they are authorized to use Plaintiffs' trademarks, tradenames or trade dress or are in any way associated with Plaintiffs.

WHEREFORE, Plaintiffs, R/S Associates, a Florida Limited Partnership and Dan Shooster, respectfully request that this Court enter an Order enjoining Defendants from holding out to the public that they are authorized to use Plaintiffs' trademarks, tradenames or are in any way associated with Plaintiffs, and for such further relief as this Court deems just and proper.

I HEREBY CERTIFY a copy of the foregoing has been forwarded via first class mail to Elaine Johnson James, Esquire, 1645 Palm Beach Lakes Boulevard, Suite 1200, West Palm Beach, Fl 33401 this _13_ day of _June_____, 2000.

FRIEDMAN, ROSENWASSER & GOLDBAUM, P.A.
Attorneys for Plaintiffs
5355 Town Center Road #801
Boca Raton, Florida 33486
Tel: (561) 395-5511
Fax: (561) 368-9274


by: _____
    KEITH A. GOLDBAUM, ESQUIRE
    FBN 0475637

FESTIVAL                    ID:9549683980                    APR 15'99   16:45 No.003 P.08

# *FORUM ARLINGTON PROPERTIES, LTD.*

16158 Wilshire Blvd., Suite 1414, Los Angeles, CA 90036

November 2, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

<u>VIA TELECOPIER</u>

Re:     Festival/Dallas

Dear Dan:

Pursuant to our discussion, this letter shall confirm our agreement relating to the use of your Festival logo and advertising (as set forth in my November 7, 1997 letter to you, modified by letter dated November 28, 1997). We shall extend the rights granted for an additional year. Additionally, we shall have the right to use two new TV spots created for you by Beber/Silverstein titled "comps", indefinitely. In return we agree to pay you the sum of $50,000 within 6 months of this date. $49,000 shall be allocated to production costs you have paid for the new ads and $1,000 shall be allocated to the continuation of the logo license.

And finally, pursuant to your request, the following are current costs incurred on the Dallas Festival. These costs are approximate and the costs are continuing as we finalize construction and carry negative operating income until stabilization.

| | |
|---|---|
| Current loan x 50% | $1,400,000 |
| Capital to-date x 50% | $1,600,000 |
| New $1m loan x 50% | $  500,000 |
| Partner buy-out x 100% | <u>$1,900,000</u> |
| | |
| Total cost of 50% | $5,400,000   (of this amount, $1,900,000 is currently financed)<br>(this amount does not include carry on capital) |

I look forward to continuing our discussions towards a mutually beneficial venture. Also, please don't forget to discuss the overall participation with Harry. I am eager to know your collective thoughts on that issue.   Best regards to you and the family.

Sincerely,

Bob Yari



# EXHIBIT _A_

ID:9549683980                    APR 16 '99   8:37 No.001 P

**FESTIVAL**

## FORUM ARLINGTON PROPERTIES, Ltd.  10650 WILSHIRE BOULEVARD, SUITE 1050, LOS ANGELES, CA 90024

March 5, 1998

Mr. Dan Shooster
Festival Flea Market Mall
2900 West Sample Road
Pompano Beach, FL 33073

<u>VIA TELECOPIER</u>

Re:    Festiventures/ Festival Marketplace

Dear Dan:

Pursuant to our discussion, this letter shall confirm my agreement relating to your consulting services with respect to the Festival Marketplace Mall and our general understanding regarding our potential joint venture.

Over and above the commitments set forth in the November 7, 1997 letter, Festival Marketplace, Ltd. Shall pay you the sum of $100,000 for your consulting services up through opening and stabilization (approximately three months) of the mall. We have agreed that this sum will be payable once the mall is operational and positive cash flows are generating. I truly appreciate your understanding in this respect as this will allow the current availability of funds to be concentrated on the construction, marketing and leasing efforts.

Additionally, as we are contemplating our joint venture and I await draft agreements from your attorney, we shall both move forward with efforts to procure venture capital financing in the interim as long as no liability or cost accrues to you prior to full execution of an agreement. This agreement will contain a provision which provides that you will be entitled to 10% ownership in the venture at no cost, should you not desire to participate financially in the equity requirements. And finally, we both agree to use good faith efforts to gain one another an equity purchase opportunity in each of our respective Festival Malls.

I hope this accurately summarizes our discussions. Please do not hesitate to contact me if anything is contrary to your understanding. I look forward to seeing you and Leslee in Dallas. Best regards.

Sincerely,

Bob Yari

# EXHIBIT ___ B

September 27, 1999

**CERTIFIED MAIL RETURN RECEIPT REQUESTED**
Robert Yari
Forum Arlington Properties, Ltd.
10850 Wilshire Boulevard, Suite 1050
Los Angeles, CA  90024

      Re:    <u>Expiration of Right to Use Trademarks</u>
               Our File: 5477.3100

Dear Mr. Yari:

As you know this firm represents Dan Shooster and his business in trademark matters. I write to remind you that your trademark rights expire shortly. As you agreed in your letter to Dan Shooster dated November 2, 1998, whatever limited right you may have enjoyed to use our client's trademarks (the "Trademarks")—including, without limitation, *Festival Flea Market Mall* and *Festival Marketplace Mall*, expires on November 7, 1999. Likewise, any right to use any advertising or other materials containing the Trademarks expires at such time. Please note that notwithstanding the expiration of your license rights, the indemnities that you extended to our client in your March 19, 1998, letter continue in effect and survive such expiration.

Unless you want to enter a formal license agreement in accordance with the instructions set forth below, on or before November 7, 1999, you are reminded that as of such date, under federal law, you must on such date:

- cease using the Trademarks and any colorable imitations thereof, including all materials containing the Trademarks;

- cancel any assumed-name registrations pertaining to any of the Trademarks (including, without limitation, any such registration pertaining to an assumed name incorporating any of the Trademarks);

- amend your company name if it incorporates any of the Trademarks; and

# EXHIBIT ___*C*___

September 27, 1999
Robert Yari
Page 2

- take any further actions our client may reasonably require to avoid any actual or potential public confusion concerning the parties' respective businesses.

The foregoing obligations are not exclusive of our client's other rights, all of which it reserves.

As you may know, Mr. Shooster hold federal registrations for his mark under the Federal Lanham Act. The Act requires Mr. Shooster, as a condition of his registrations, both to control the use of his marks, and to prevent the unauthorized use of his marks. Consequently, we have warned Mr. Shooster that he must take steps to prevent the continued use by you of the marks after any license rights you have expire on November 7, 1999, to satisfy his federal legal obligations.

If you desire to enter a license agreement to use the Trademarks, you may do so by satisfying all of the following conditions by no later than November 7, 1999:

- notify our firm in writing of your intention to renew;

- pay R/S Associates and Daniel Shooster all amounts you currently owe them respectively, including, without limitation, $51,000 (which includes the $1,000 initial fee never paid) to R/S Associates and $100,000 to Mr. Shooster (please note that there are amounts in addition to this sum that you owe Mr. Shooster); and

- enter our client's form of trademark license agreement.

In any event, the amounts you owe R/S Associates and Daniel Shooster are over due and must still be paid. Mr. Shooster may consider granting you the right to pay the amounts owed to R/S Associates in monthly payments of $5,000, starting October 1, until paid in full, if you otherwise pay the personal amounts owed to him now. He makes this gesture in light of your prior offer of July to make payments on a monthly basis. Under that offer, your proposed monthly payments would have unduly delayed the payment to him that he has told you he wants personally to apply to some matters he has pending. Those payments from you are long overdue. You should be aware that Mr. Shooster has avoided numerous collection attempts as a courtesy to you and to avoid overburdening you. Mr. Shooster seeks the payment to him personally as a gesture of your own good faith and commitment. At this point that your license is expiring, it is imperative to finalize these matters.

To pursue a formal licensing program or otherwise discuss your trademark commitments, please contact me directly. I will be happy to discuss any questions or comments you may have. If you prefer to communicate by e-mail, my address is RRosenwasser@Lawmind.com. To avoid any delay in understanding your intentions, I would appreciate you contacting me at your earliest convenience, and in no event later than September 30, 1999.

5477\Ltr-Yari2LicenseAgreementExpiration1
8.28.9908:288.13.99 11:04:38

September 27, 1999
· Robert Yari
Page 3

Sincerely,

Ronald N. Rosenwasser

cc.:   Daniel Shooster

5477MSc-TrademarkChart2.doc
\12.28.99 14.58.37\12\599  10.0\0023\2699  09.00

## TRADEMARK STATUS REPORT-R/S ASSOCIATES
## AS OF DECEMBER 15, 1999

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace Mall #3101 | 35: Preparing and placing advertisements for others; dissemination of advertising matter on behalf of vendors | 75/439,184 | | Federal |
| | 36: Leasing of market space in a multi-tenanted marketplace | | April 16, 1999 | |
| Festival Marketplace Mall/Logo #3102 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed materials regarding a multi-tenanted marketplace | T9900000451 | | Florida |
| | 36: Leasing of market space in a multi-tenanted marketplace | | | |
| Winners! Arcade/Design #3103 | 41: Video game arcade services and providing party planning services and facilities | 2,285,10 | Oct. 12, 1999 Oct. 12, 2005 Oct. 12, 2009 | Federal |
| Winners! Arcade/Design #3121 | 42: Video arcade, games and party services | T9800000910 | Aug. 4, 1998-Aug. 4, 2008 | Florida |

1


EXHIBIT _D_

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festival Marketplace #3104 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace | 2,229,205 | Mar. 2, 1999-<br>Mar. 2, 2005-<br>Mar. 2, 2009 | Federal |
| Festival Marketplace #3105 | 36: Leasing of Flea Market space | T9600001373 | Dec. 10, 1996-<br>Dec. 10, 2006 | Florida |
| | 35: : Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace | | | |
| Shopaholic #3112 | 36: Leasing of market space in multi-tenanted marketplace | T9600001374 | Dec. 10, 1996-<br>Dec. 10, 2006 | Florida |
| | 42: Offering membership in an association to person who purchase a certain dollar volume of merchandise from a multi-tenanted marketplace; Members will be provided special shopping courtesies, discounts, special sales events and a newsletter | | | |
| Festiventures #3120 | 35: Business consultation services geared toward persons who want to create specialized retail market-places; preparing advertising for persons who operate specialized retail marketplaces | 2,097,593 | Sept. 16, 1997-<br>Sept. 16, 2003-<br>Sept. 16, 2007 | Federal |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Festiventures 3112 | 35: Consulting services to persons who want to create specialized retail marketplaces; preparing advertising for persons who operate specialized retail marketplaces | T96000001093 | Sept. 24, 1996- Sept. 24, 2006 | Florida |
| Festivalue #3111 | 35: Promoting and advertising the goods being sold by vendors in a multi-tenanted marketplace by providing discount vouchers; advertising services, namely, providing advertising space in a periodical of the goods and services being provided by retail vendors | 2, 097,592 | Aug. 16, 1997- Aug. 16, 2003- Aug. 16, 2007 | Federal |
| Festivalue #3119 | 35: Preparing advertising for vendors in a multi-tenanted marketplace and preparing advertising for owner of said marketplace | T96000001089 | Sept. 18, 1996- Sept. 18, 2006 | Florida |
| FLEABYTES #3110 | 35: Promoting the goods and services of others by providing advertising and information through a listing or sublisting on a national computer network | 2,044,577 | Mar. 11, 1997- Mar. 11, 2003- Mar. 11, 2007 | Federal |
| FLEA BYTES #3118 | 42: Operating an information link on the Internet | T96000001091 | Sept. 18, 1996 Sept. 18, 2006 | Florida |

3

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea Market Mall #3117 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | T9600001092 | Sept. 18, 1996<br>Sept. 18, 2006 | Florida |
| Festival Flea Market Mall #3108 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace<br><br>36: Leasing of Flea Market Space | 1,958,606 | Feb. 27, 1996-<br>Feb. 27, 2002-<br>Feb. 27, 2006 | Federal |
| Festival Flea Market/Design #3107 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | 1,948,221 | Jan. 16, 1996-<br>Jan. 16, 2002-<br>Jan. 16, 2006 | Federal |
| Festival Flea Market/Design #3115 | 36: | T15036 | Sept. 23, 1991<br>Sept. 23, 2001 | Florida |
| Flea T.V. #3106 | 35: Promoting the goods and services of others by providing advertising on a television shopping show | 2,018,022 | Nov. 19, 1996-<br>Nov. 19, 2002-<br>Nov. 19, 2006 | Federal |

5477JMsc-Trademark.Chart2.doc
V12.28.99 14:58:37121599 10:00:032699 09:00

5477MIsc-TrademarkChart2.doc
\12.28.99 14:58:37\21599  10:00\032699  09:00

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| Flea T.V. #3114 | 35: Preparing television advertising for vendors in a multi-tenanted marketplace and preparing advertising for the owner of the marketplace | T96000001090 | Sept. 18, 1996<br>Sept.18, 2006 | Florida |
| Festival Marketplace /Design #3123 | 35: Preparing advertising for vendors in a multi-tenanted marketplace; dissemination of printed material regarding a multi-tenanted marketplace<br><br>36: Leasing of market space in multi-tenanted marketplace | 75/669,681 | | Federal |

| Trademark: | Class: Description: | Serial/ Registration Number: | Registration Date; Affidavit of Use Filing Date and Renewal Date: | Federal or State |
|---|---|---|---|---|
| International Festival Center | Third party application | 75/377,290 | ITU Application | Federal |

# FESTIVAL MARKETPLACE MALL®

## IT'S A BIG WORLD IN HERE.

ARLINGTON

FESTIVAL

TO FT WORTH → / → TO DALLAS

•FREE PARKING • FREE ADMISSION
•WHEELCHAIRS • STROLLERS • DIAPER DECKS
•GIFT CERTIFICATES

**360 AT PIONEER PARKWAY-ARLINGTON**
**HEART OF THE METROPLEX**
OPEN WED.-FRI. 10:00 AM-7:00 PM
SAT. 10:00 AM-8:00 PM
SUN. 12:00 NOON-6:00 PM
(817) 649-8065

FESTIVAL

---

into the Festival Marketplace Mall. And discover
e new world. With over 500 merchants selling
-brand merchandise at below outlet prices. it's
bargain-hunter's paradise. There are also a few
ected treats – like our full-service beauty salon.
arcade, 6-screen movie theater and our
ational Food Court. It's worlds apart from any-
ou've seen before and it's all just minutes away.
p out of the ordinary and into the unique shop-
xperience of the Festival Marketplace Mall.

e el Festival Marketplace Mall y descubra todo
ndo nuevo. En este paraíso de los amantes de
rias. más de 500 comerciales venden artículos
rca a precios más bajos que los del mercado. Y
as atracciones que no esperaba - por ejemplo,
ón de belleza que ofrece todo tipo de servicios.
de vídeo, una sala cinematográfica de 6
as y una Galería Internacional de Restaurantes.
totalmente diferente a lo que haya visto antes.
ncuentra a pocos minutos de distancia. Así
cúase a salir de la rutina y disfrute recorriendo
endas del Festival Marketplace Mall.

ez le Festival Marketplace Mall et vous
rinez un monde entièrement nouveau. Avec
500 marchands vendant des marchandises de
à des prix inférieurs au prix de détail. c'est
nt le paradis pour les amateurs de bonnes
. Quelques surprises également, comme notre
le beauté. notre galerie de jeux vidéo. notre
à six salles et notre Galerie de Restauration
ionale. Un monde de différence par rapport à
que vous avez vu auparavant et à quelques
s seulement. Sortez de l'ordinaire pour
chose d'unique au Festival Marketplace Mall.

chen Sie die Festival Marketplace Mall. und
en Sie eine völlig neue Welt – ein wahres
sparadies. In dem mehr als 500 Händler
ware zu Preisen verkaufen. die noch
em Großhandelspreis liegen. Eine wahre
ruhe. Außerdem erwarten Sie hier auch
überraschende Extras. wie etwa unser
eitssalon mit vollem Serviceangebot. eine
urkade. ein Kino mit 6 Leinwänden und unser
ionaler Imbißbereich. Sie fühlen sich in eine
andere Welt versetzt – so etwas haben





# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTDLs |

 

(1 of 2)

---

**Check Status**



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* MALL |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-603926 |
| **Registration Number** | 1958606 |
| **Filing Date** | 11/28/1994 |
| **Registration Date** | 02/27/1996 |
| **Design Search Code** | 02.01.33; 02.09.05; 19.07.11; 26.11.07; 26.11.12; 26.11.13 |
| **Description of Mark** | The mark consists of an abstract person outlined in white, running with a shopping bag in each hand against a colored background. The words "*FESTIVAL FLEA MARKET* MALL" appear in a mixture of styled block print and regular print underneath.; The mark is lined for the colors red and blue. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "*FLEA MARKET* MALL" APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 12/05/1995 |
| **Type of Mark** | SERVICE MARK |

---

| International Class | 035 |
|---|---|
| Goods and Services | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

| International Class | 036 |
|---|---|
| Goods and Services | leasing of *flea market* space; DATE OF FIRST USE: 1994.10.01; DATE OF FIRST USE IN COMMERCE: 1994.10.01 |

 

**(1 of 2)**



# US PATENT & TRADEMARK OFFICE
## TRADEMARK TEXT AND IMAGE DATABASE

| Help | Home | Marks | Boolean | Manual | Number | Order Copy | PTDLs |

 

**(2 of 2)**

---

**Check Status**



| | |
|---|---|
| **Word Mark** | *FESTIVAL FLEA MARKET* |
| **Owner Name** | (REGISTRANT) Shooster, Daniel H. |
| **Owner Address** | 2900 W. Sample Road Pompano Beach FLORIDA 33073 INDIVIDUAL UNITED STATES |
| **Attorney of Record** | KAREN M. SULLIVAN |
| **Serial Number** | 74-548598 |
| **Registration Number** | 1948221 |
| **Filing Date** | 07/05/1994 |
| **Registration Date** | 01/16/1996 |
| **Design Search Code** | 29.01.07 |
| **Description of Mark** | The mark consists of the term *"FESTIVAL"*, colored in a multi-colored mosaic-like pattern and the words *"FLEA MARKET"* separated by a small comet-like design.; The drawing is lined for the colors green, yellow, red, blue and orange and color is claimed as a feature of the mark. |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE *"FLEA MARKET"* APART FROM THE MARK AS SHOWN |
| **Register** | PRINCIPAL |
| **Published for Opposition** | 10/24/1995 |
| **Type of Mark** | SERVICE MARK |
| **International Class** | 035 |

| | |
|---|---|
| **Goods and Services** | preparing advertising for vendors in a multi-tenanted marketplace; dissemination of matter regarding a multi-tenanted marketplace; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |
| **International Class** | 036 |
| **Goods and Services** | leasing of *flea market* space; DATE OF FIRST USE: 1991.06.06; DATE OF FIRST USE IN COMMERCE: 1991.06.06 |

 

**(2 of 2)**

/ifetch42ENG+ALL (2)046574 2 2 2 2